SHOOK, County Judge, v. JOURNEAY.†

(Court of Civil Appeals of Texas. San Antonio. April 24, 1912. Rehearing Denied May 22, 1912.)

1. COURTS (§ 183*)—COUNTY COURT—PROBATE JURISDICTION.

A county court sitting in probate is a court of general jurisdiction and entitled to all the rights of such a court, having the same judicial discretion in regard to matters coming before it that the district court has with reference to matters within its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 412, 437, 439–447, 449–455; Dec. Dig. § 183.*]

2. COURTS (§ 185*)—COUNTY COURTS—RIGHT TO APPEAL.

Rev. St. 1895, art. 2255, providing that any person who may consider himself aggrieved by any decision, order, decree, or judgment of the county court may appeal to the district court, applies to any judgment, decision, decree, or order which at the end of the term will be conclusive of the controverted right, unless set aside by appeal or other revisory proceeding.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 185.*]

3. WILLS (§ 358*) — PROBATE COURTS — DECISIONS REVIEWABLE—INTERLOCUTORY ORDER.

An order admitting a will to probate, but continuing for further hearing objections to the appointment of relator as independent executrix, was not a final order from which an appeal could be taken.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 822; Dec. Dig. § 358.*]

4. MANDAMUS (§ 141*)—DISTRICT COURT—APPELLATE JURISDICTION—"CONTROL."

Const. art. 5, § 8, provides that the district court shall have appellate jurisdiction and control in probate matters over the county court, and Rev. St. 1895, arts. 1099, 1841, provide that it shall have appellate jurisdiction and "general control" of probate matters over the county court. Held, that the words "control" and "general control," as so used, did not enlarge the district court's jurisdiction, which was limited to appellate jurisdiction over courts sitting in probate, to be exercised only by appeal or certiorari, and hence the district court cannot issue mandamus requiring the county court to perform a duty not merely ministerial but involving judicial discretion.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 276–278; Dec. Dig. § 141.*

For other definitions, see Words and Phrases, vol. 2, pp. 1549–1552; vol. 8, p. 7617.]

5. MANDAMUS (§ 4*)—SCOPE OF WRIT—RELIEF BY APPEAL.

Mandamus will not lie to correct a judgment, however erroneous, from which an appeal may be taken.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 9–21, 24–34; Dec. Dig. § 4.*]

6. MANDAMUS (§ 178*)—ISSUANCE TO LOWER COURT—SCOPE.

District courts have appellate jurisdiction only as to probate matters over county courts, and mandamus issued by a district to a county court in such proceedings should never go further than to command the county court to proceed to judgment, leaving the court free to use its own discretion regarding the kind of judgment to be entered, which when entered may be reviewed by appeal or certiorari.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 396–400, 410; Dec. Dig. § 178.*]

---

7. EXECUTORS AND ADMINISTRATORS (§ 15*)—
APPOINTMENT — INDEPENDENT EXECUTRIX —
RIGHT TO APPOINTMENT—CONTEST.

Rev. St. 1895, art. 1911, provides that, when a will shall have been probated, the court shall grant letters testamentary to the executor or executors appointed thereby within 20 days, except in the case provided by article 1881. Article 1910 disqualifies insane persons and minors, except a surviving husband or wife, and article 2026 provides for the removal of executors and administrators on notice, where it appears that they have misapplied, embezzled, or removed from the state any property, or were about to do so, or when they become of unsound mind or from any other cause are incapable of the duties of the trust. *Held*, that where creditors objected to the appointment of testator's widow as independent executrix on the ground that she was not a proper person, in that trust funds had been embezzled by testator, out of which many of the creditors' claims arose, and had been used to place property in the name of petitioner's son, part of which had been transferred to her, and alleging that among the papers of the deceased could be found evidence showing such investment, by which a resulting trust could be established, and that petitioner was particeps criminis in the embezzlement, the county court was not bound to appoint her, but was entitled to hear evidence supporting such charges, and, if sustained, to refuse such appointment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 32–35; Dec. Dig. § 15.*]

8. EXECUTORS AND ADMINISTRATORS (§ 14*)—
PROVISIONS OF WILL—SUSPENSION AND AN-
NULMENT—EXECUTION—"ANNUL."

Rev. St. 1895, art. 1991, provides that when a will has been probated its provisions and directions shall be executed, unless annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate, and articles 1992, 1993, provide for notice before any provision of the will can be annulled. *Held*, that the refusal of the county court to appoint the person named as executor was not an annulment of the provision of the will, within article 1991, for which a special proceeding was required; such provision being limited to provisions and directions of the will, which are to be "executed" as distinct from the provisions appointing the person to execute them.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 29–31, 42; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 1, pp. 405, 406.]

9. EXECUTORS AND ADMINISTRATORS (§ 15*)—
DISQUALIFICATION—STATUTES.

Rev. St. 1895, art. 1910, disqualifying insane persons and minors, except a surviving husband or wife, to act as executor, does not prescribe the only grounds which may be considered by the county judge to disqualify.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 32–35; Dec. Dig. § 15.*]

10. EXECUTORS AND ADMINISTRATORS (§ 20*)—
APPOINTMENT—CONTINUANCE.

A county court, on sufficient grounds being shown, may continue the appointment of an executor for the term, but is not authorized to grant an indefinite postponement.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 83–105; Dec. Dig. § 20.*]

11. MANDAMUS (§ 14*) — ISSUANCE AGAINST
JUDGE—DEMAND AND REFUSAL.

Mandamus being an extraordinary writ with prerogative features, and not a writ of right, a strong case must be presented when such writ is applied for to coerce action by a judge, the presumption being that he has done his duty, relator being required to show a previous request to act, and a definite, unqualified refusal before the writ will issue.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 44–46; Dec. Dig. § 14.*]

Appeal from District Court, Bexar County; Arthur W. Seeligson, Judge.

Mandamus by Ella D. Journeay against P. H. Shook, County Judge. From a judgment in favor of the relator, respondent appeals. Reversed and rendered.

C. A. Davies, of San Antonio, for appellant. Bruce W. Teagarden and C. M. Chambers, both of San Antonio, for appellee.

MOURSUND, J. On October 4, 1911, appellee filed an application in the county court of Bexar county for the probate of the will of H. B. Salliway, deceased, and for letters testamentary; she having been appointed independent executrix by the will.

On November 7, 1911, a number of creditors of H. B. Salliway filed an instrument in said county court contesting the application of appellee to be appointed executrix, alleging that she was insolvent, not a proper person to be appointed executrix; that they feared she would dispose of the property and they would lose their debt; that the placing of appellee in possession of the papers of the estate would jeopardize the interests of such creditors; and that the estate of H. B. Salliway was insolvent. They prayed that appellee be not appointed executrix, and that some competent person be appointed administrator with the will annexed, and for all other orders to which they might be entitled in law or equity. On December 20, 1911, they filed an amended contest, alleging that a great portion of their indebtedness accrued against said H. B. Salliway by reason of the embezzlement of trust funds in his hands; that such funds were used in paying the expenses of numerous trips taken by appellee and the deceased, and in placing property in the name of appellee's son, a portion of which had since been transferred to appellee; that among the papers of the deceased the evidence of such use of the money could be found, and to place appellee in possession of such papers would result in depriving the contestants of access thereto, and from securing the evidence showing that the trust funds were transferred to appellee; and that thereby she became particeps criminis in the embezzlement. The amounts due the contestants respectively were set out.

On December 9, 1911, the will was admitted to probate, and an order entered, which was in all respects sufficient to probate the

will, but contained the following clause: "It is further ordered by the court that the appointment and qualification of said Ella D. Journeay as independent executrix be held in abeyance until the court can hear evidence upon the objection filed herein, and decide whether or not she is a proper person to be so appointed by the court."

On December 15, 1911, Ella D. Journeay filed a petition in the district court of Bexar county, Fifty-Seventh district, for mandamus, praying as follows: "Wherefore your relator prays that said respondent be cited to appear and answer this petition, and that upon hearing of this cause, she have judgment compelling P. H. Shook, county judge, Bexar county, Tex., respondent herein, to enter a judgment or order not only probating said will of H. B. Salliway, deceased, appointing her independent executrix thereof, but an order permitting her to qualify as such, as required by law, or in alternative be permitted to qualify and compel respondent to decide said question and enter order accordingly, or in any event set said objections for hearing at an early date, and that respondent be cited to show why said writ of mandamus should not issue, and that your relator recover all costs in this behalf expended."

On December 20th appellant answered, alleging: That he had never refused to set down for hearing the contest against the appointment of appellee, but that the same was pending before him, and that he proposed to set an early date for the hearing thereof at which he proposed to determine the fitness of the appellee as such executrix. That upon the amended contest he is informed and believes interrogations have been propounded to parties in California and in Harris county, Tex., and that until such evidence was at hand, in his discretion as a judge, he felt that it would be improper to set the hearing at an earlier date than one at which said testimony would be procurable. That when judgment should be rendered by him either party could appeal, and by reason of such remedy the relator ought not to have and could not have the remedy by mandamus.

The district court granted the petition for writ of mandamus, commanded appellant to not only enter an order probating said will, but also an order permitting appellee to qualify as such independent executrix at once.

The lower court, at appellant's request, filed findings of fact. One of these is that the county judge entered an order probating the will, which order is copied therein in full. As there is no question of the sufficiency of the order as an order to probate the will, we see no necessity for copying it. The other findings are as follows: "I find: That H. B. Salliway, deceased, died in San Antonio, Bexar county, Tex., on September 27, 1911, and left a last will and testament in which Ella D. Journeay was named as independent executrix, without bond. That on the 4th day of October, 1911, relator herein filed an application as required by law to probate said will in Bexar county, Tex. That notice to probate said will was duly and legally posted, as required by law. That on the 7th day of November, 1911, in the same proceedings to probate said will, Henry Grote et al., claiming to be creditors of estate of H. B. Salliway, deceased, filed a motion, objecting to the appointment of Ella D. Journeay as independent executrix. That the said Henry Grote et al. did not file a separate proceeding for this purpose, but joined same in proceeding to probate will, and that no notice of said objections was ever served on Ella D. Journeay, and that she made and filed motion for various reasons to strike out said objections. I further find that Henry Grote et al. are creditors, or at least claim to be, and only in capacity of creditors filed objections to independent clause of said will, and same was filed in same proceedings and not by separate proceedings. I find that on the 7th day of December, A. D. 1911, said will was offered for probate, and legally proven, as required by law, and as shown by order of county judge ordering same probated. I find that Henry Grote et al., creditors, offered no proof as to why Ella D. Journeay should not be permitted to qualify. * * * I further find that under said decree will is probated, and that court had no authority and it was not in his discretion to refuse to permit independent executrix to qualify by order of court, especially so when separate proceedings had not been filed by any one. I further find that Ella D. Journeay under order of court could not appeal, as no final judgment was rendered against us (her), and neither could she qualify as independent executrix, as requested by H. B. Salliway in his last will and testament. And I therefore find that under all the facts that mandamus, as prayed for in petition filed December 15, 1911, should be granted, and is and was granted and the following decree entered." It is not necessary to copy the decree.

The conclusions of law filed below were as follows: "My conclusions are that, as a matter of law, said writ of mandamus should issue, as, court having ordered will probated, it was not within his discretion to so fix order refusing to permit Ella D. Journeay to qualify as independent executrix, as requested in last will and testament of H. B. Salliway, deceased, and especially so, when there was not a separate suit filed contesting the independent clause of said will, and when creditors had and have an ample remedy at law. Where the statute prescribes a mode of procedure, and it does as to creditors, then the mode prescribed, and no other, must be followed; and I doubt if creditors could at all contest the independent

clause of a will, as statute prescribes ample protection to them if followed, and same was not done in these proceedings, and by their failure to so do it does not lie within the discretion of a probate judge to refuse to permit person named in last will and testament as independent executrix to qualify as such, specially so when will has been ordered probated. Said order probating will should have permitted Ella D. Journeay to qualify as independent executrix, as provided in said will, and this being purely a ministerial act on part of judge, in refusing or holding same in abeyance for a time not fixed or set, said writ of mandamus will lie and is granted."

Appellee contends that all of appellant's assignments of error are briefed in violation of the rules, and should be disregarded. This criticism is correct as to many of the assignments of error; but, as all of the assignments question the correctness of the judgment of the court and his conclusions of law, we deem it necessary to consider only the third assignment, because it raises in a direct manner the real issue in the case. The assignment is as follows: "The court erred in granting the writ of mandamus in this said cause because the record of the case shows that the question of the appointment of the independent executrix of the last will and testament of H. B. Salliway was a matter involving judicial discretion, and not merely a ministerial act, and hence no writ of mandamus could issue to coerce the respondent in rendering his judicial opinion."

[1-3] The county court, sitting in matters of probate, is a court of general jurisdiction and entitled to all the rights of such a court. It has the same judicial discretion in regard to matters coming before it as the district court has with reference to matters coming within its jurisdiction. "By article 2255, any person who may consider himself aggrieved by any decision, order, decree, or judgment of the county court shall have the right to appeal to the district court. This applies to any judgment, decision, or order, which, at the end of the term in which it was entered, would be held conclusive of the controverted right, unless set aside by appeal or other revisory proceeding." Simpkins on Estates of Decedents, p. 326. If the county court had entered an order holding relator incompetent and disqualified to act as executrix, and appointing some one as administrator with the will annexed, the order could have been appealed from. The order, as entered, was not a final order such as could be appealed from, but simply postponed action in regard to that portion of her application praying that she receive letters testamentary. In the mandamus proceeding the question arises whether the court, under the facts of this case, was authorized to command the coun-

ty court to enter a certain order, viz., permitting relator to qualify as executrix.

[4] The Constitution, art. 5, § 8, in defining the jurisdiction of the district court, states that it shall have appellate jurisdiction and control in probate matters over the county court.

Articles 1099 and 1841 provide that it shall have appellate jurisdiction and "general control" in probate matters over the county court. Before the adoption of the present Constitution, the district court had original and appellate jurisdiction and general control over the county court in probate matters.

We find no other provisions for appellate jurisdiction of our courts in which it was thought necessary to append the word "control" or words "general control" in order to give the court the necessary power of revision. And in view of the fact that upon an appeal or upon certiorari to the district court in matters of probate the hearing is de novo, it is difficult to see why the word "control" should be embraced in the law unless it added something to it. However, our Supreme Court has held that since the adoption of the present Constitution the district court has only appellate jurisdiction over county courts sitting in matters of probate. Franks v. Chapman, 60 Tex. 48; Ewing v. Cohen, 63 Tex. 484; Buchanan v. Bilger, 64 Tex. 589; McCorkle v. McCorkle, 25 Tex. Civ. App. 151, 60 S. W. 434. The appellate jurisdiction can be exercised only by appeal or certiorari. Harbison v. Harbison, 56 S. W. 1007. "The granting of the writ of mandamus is the exercise of an original and not an appellate jurisdiction. High's Extr. Rem.; Fannin County v. Hightower, 9 Tex. Civ. App. 293, 29 S. W. 189. The district court having only appellate jurisdiction in probate matters, and the suit being one invoking the original jurisdiction of the court, it follows that the district court has no more power to direct the county court by mandamus in probate matters than any other appellate court has to direct the inferior court. Therefore, if the act which the district court required the county court to perform is one involving judicial discretion, and not merely a ministerial duty, the district court exceeded its power. The act required to be performed was the entry of an order permitting relator to qualify as independent executrix. The right of a court to use its discretion in entering judgments and orders has always been jealously guarded. Merrill, in his work on Mandamus (page 33), says: "The writ lies to make a body or officer, charged with a duty involving judgment or discretion, take action in the matter. When a subordinate body is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it can-

not be directed to decide in a particular way, however clearly it may be made to appear what that decision ought to be. A court will be ordered to proceed to judgment, but it will not be instructed to render a particular judgment. It is said there is not a case where the King's Bench has ordered an inferior court to render a particular judgment. When a decision has been reached in a matter involving discretion, a writ of mandamus will not lie to review or correct it, no matter how erroneous it may be."

In the case of Fannin County v. Hightower, supra, the court, in speaking of the power conferred upon it to mandamus the district judge, says: "It was not intended that this court should direct the district court how it should proceed, or what final judgment its proceedings should result in. This would be trying the case in advance of the district court, and the exercise of original jurisdiction."

Our Supreme Court, in the case of Aycock v. Clark, 94 Tex. 377, 60 S. W. 666, quotes with approval the language of the Supreme Court of the United States in Ex parte Newman, 14 Wall. 152, 20 L. Ed. 877, as follows: "Superior tribunals may by mandamus command an inferior court to perform a legal duty where there is no other remedy, and the rule applies to judicial as well as to ministerial acts, but it does not apply at all to a judicial act to correct an error, as where the act has been erroneously performed. If the duty is unperformed, and it be judicial in its character, the mandate will be to the judge directing him to exercise his judicial discretion or judgment, without any direction as to the manner in which it shall be done, or if it be ministerial, the mandamus will direct the specific act to be performed. * * * Such a writ cannot perform the functions of an appeal or writ of error, as the superior court will not, in any case, direct the judge of the subordinate court what judgment or decree to enter in a case, as the writ does not vest in the superior court any power to give any such direction or to interfere in any manner with the judicial discretion and judgment of the subordinate court." In said case of Aycock v. Clark the writ was applied for to compel the district judge to enter a certain judgment upon a verdict, and the court says: "In our opinion, there are two insuperable objections to granting the relief prayed for in this case. In the first place, the act which we are asked to command the officer to perform is strictly judicial in its character, and in such case a mandamus cannot be awarded. A judge may be commanded to proceed to the trial of a case; so, also, he may be compelled to enter a judgment upon the verdict of a jury, where he has refused to enter any judgment whatever. Lloyd v. Brinck, 35 Tex. 1. But the determination of what is the proper judgment to be entered upon a verdict calls for the exercise of judicial discretion, and that discretion cannot be controlled by another court by a writ of mandamus. In the second place, it is elementary law that a mandamus is never awarded where the law has provided another plain, adequate, and complete remedy. Ewing v. Cohen, 63 Tex. 482; Little v. Morris, 10 Tex. 263; Screwmen's Association v. Benson, 76 Tex. 552, 13 S. W. 379. A final judgment having been rendered in the cause, the plaintiffs have their remedy to correct that judgment either by an appeal or a writ of error to the Court of Civil Appeals." It also cites with approval an Alabama case in which the higher court, after stating that the record did not show any reason why the lower court should not enter judgment by default, said: "Mandamus is not the remedy in such a case as this. That coercive process is proper when an inferior court refuses to proceed to judgment in a case in which the law makes it his duty to act. This court will command the inferior tribunal to proceed to judgment, but will not dictate the judgment he shall render. It compels judgment, but does not control it, when there is another adequate remedy."

In the case of Matlock, Miller & Dycus v. Smith, 96 Tex. 214, 71 S. W. 957, our Supreme Court says: "It is essentially the function of a judge to determine questions of law, and a decision upon such questions is a judicial act. It is not so with a ministerial officer. He is not empowered to decide as to the law; he is presumed to know it, and if he makes a mistake as to such question, he may be compelled to act in accordance with the law as it may be determined by the court in the particular case. But even as to an executive officer, if it be his duty to determine a question of fact, the courts will not control his decision by a writ of mandamus. So if a judge errs, however palpably erroneous his decision may be, a mandamus is not the remedy for the correction of his error."

[5] There can be absolutely no question that mandamus will not lie to correct a judgment which can be appealed from, however erroneous. Had the county judge in this case entered an order denying relator's application for letters testamentary, such order could not be questioned by mandamus. In addition to the cases quoted from, we cite the following: State v. Morris, 86 Tex. 229, 24 S. W. 393; Ewing v. Cohen, 63 Tex. 482; Arberry v. Beavers, 6 Tex. 457, 55 Am. Dec. 791; Jefferson v. Scott, 135 S. W. 705; Wright v. Swayne, 140 S. W. 222.

[6] It appears to us it would naturally follow that the district court should never go further than to command the county court to proceed to judgment, leaving such court free to use its discretion regarding the kind of judgment to be entered. The judgment could then be revised by appeal or certiorari.

Appellee contends that in this case the

county judge having admitted the will to probate, and it being conceded that relator was not a minor or insane, there remained no discretion in the county judge with regard to her appointment, and therefore it became a ministerial duty which could be required by mandamus. The learned trial judge took this view of the case, as is shown by his conclusions of law. The doctrine that a judicial act may become a ministerial one upon the admission of the facts concerning the determination of which alone judgment was authorized has been recognized as correct. Merrill on Mandamus, § 48. It has been recognized in Texas with reference to an executive officer. Sansom v. Mercer, 68 Tex. 489, 5 S. W. 62, 2 Am. St. Rep. 505. Cyc. p. 195, reads as follows: "Inferior courts of probate jurisdiction will be compelled to establish wills and grant letters when all the facts exist to make the duty purely ministerial." We have not been able to procure the reports containing some of the cases cited in Merrill and in Cyc. on this matter. Of those we have examined some are under particular statutes, which make the duty to probate wills and appoint executors a ministerial one; others are under statutes allowing no appeal from the decisions. We have found no case where this doctrine was held applicable where an· appeal would lie from the order of a court after its entry.

[7] However, we do not agree that in this case the county judge was without discretion in the matter of appointing relator executrix, and, in view of· the importance of the question, will discuss it at some length. Article 1911, Revised Statutes, provides: "When a will shall have been probated it shall be the duty of the court to grant letters testamentary to the executor or executors appointed by such will, if any there be, or to such of them as are not disqualified, and are willing to accept the trust and qualify according to law within twenty days after such probate, except in the case provided for in article 1881." Article 1910 expressly disqualifies insane persons, and those under 21 years of age, except a surviving husband or wife. Article 2026 provides the cases in which executors and administrators can be removed by the county judge without notice. Article 2027 provides the cases in which they may be removed with notice. Among these causes are the following: "When there shall appear sufficient grounds to believe that they have misapplied, embezzled or removed from the state the property, or any part thereof, committed to their charge, or that they are about to misapply, embezzle or remove from the state any of such property." "When an executor or administrator becomes of unsound mind, or from any other cause is incapable of performing the duties of his trust."

Appellee relies upon the case of Perkins v. Wood, 63 Tex. 396, to show that the above-mentioned articles do not apply to independent executors. However, our Supreme Court, in the case of Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367, in a well-considered opinion, announces the rule that, except in those articles which relate to acts to be done in the settlement of an estate, the term "executors," as used in our statutes, includes independent as well as other executors. Also, that article 1995 only suspends the power of the probate court over the executor so far as he is engaged in the "settlement" of the estate. See, also, National Bank v. Bell, Executrix, 31 Tex. Civ. App. 126, 71 S. W. 570; Taylor v. Williams, 101 Tex. 393, 108 S. W. 815.

In the case of Stevens v. Cameron, 100 Tex. 515, 101 S. W. 791, our Supreme Court, in discussing the matter of qualifications of an administrator, uses the following language: "It does not follow, in any event, as we think, that other legal obstacles may not exist to an appointment as administrator than that mentioned in article 1910. In article 2027, among other grounds for the removal of executors or administrators, it is provided that 'where an executor or administrator becomes of unsound mind, or from any other cause is incapable of performing the duties of his trusts,' he may be removed. Clearly, one who may be removed for incapacity to perform the duties of the office should not be appointed. Such a doctrine would lead to the absurdity of making it the duty of the court to appoint one administrator of an estate, and of then removing him."

There can arise instances in which it would not only be inadvisable, but absolutely wrong, to appoint the independent executor named in a will. Suppose that almost the entire estate consisted of a claim against the executor who disputed such claim, and the estate was indebted for its full value. He would be authorized to collect the estate, but he would not collect from himself the disputed claim. Again, if the estate owned a claim against another estate of which he was also executor, and there was a dispute as to the validity of the claim.

In the present case, in addition to other allegations which if established would show that relator was not a proper person to be appointed executrix, it is alleged that trust funds embezzled by deceased, and on account of which many of the creditors' claims arose, were used to place property in the name of relator's son, a portion of which had since been transferred to her. Also, that among the papers of deceased could be found the evidence showing such investment, and thereby a resulting trust therein could be established. Said allegations also charged her with being particeps criminis in the embezzlement.

These charges, if proved, would be ample

to remove an executrix. We cannot see why the court should be required to do a thing which it would be proper for it to undo immediately thereafter upon application.

It was also alleged that the estate was insolvent, and it has been decided that, where an estate is insolvent, it is held by the executrix in trust for the benefit of creditors and devisees. Farmers' & Merchants' Bank v. Bell, 31 Tex. Civ. App. 124, 71 S. W. 571. This being the case, should a trustee be appointed whose interests are inimical to the beneficiaries entitled to the trust fund? We do not regard the article which permits the requiring of bond as at all providing an adequate remedy for cases like this or the others stated by us. It is designed to meet cases where the executor is wasting, mismanaging, or misapplying the estate.

[8] It is also contended that this contest is a proceeding to annul a provision of the will, and that to do so a separate proceeding must be instituted after the will is probated. To sustain this position, the case of Prather v. McClelland, 76 Tex. 574, 13 S. W. 543, is relied upon. That was a case where it was sought upon the hearing of an application to probate the will to strike out every provision of the will except the gift to the son, although said will only gave the estate to be enjoyed in futuro, and vested it in executors who were also appointed trustees to hold and manage said estate for 25 years, with full power to invest the same from time to time; also directing the amount to be paid the son monthly. The object of the contest was to make the will read as a will for all the estate without conditions. It was correctly held that this could not be done, because the statute (article 1993) provides that when a will has been probated its provisions and directions shall be executed unless the same are annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose. It was sought to annul every provision and direction except the gift, and yet have the will probated. It was also held that the probate court has jurisdiction to annul a provision of a will even though such will exempts the executor from the control of the court in the settlement of the estate. The question now being considered did not arise in that case, nor do we think our courts will ever hold that the mere opposition to the appointment of an executor is a proceeding to annul a provision or direction of the will within the meaning of the statute. In considering this proposition, the fact that it is an independent executorship can make no difference in the rule, for a provision appointing an ordinary executor is just as much a provision of the will as one appointing an independent executor, and we have the right in either instance to assume that the decedent made such appointment on account of the confidence he had in his appointee, and because he desired the powers therein given to be exercised by him. If the refusal to appoint the independent executor amounts to annulling a provision of the will within the meaning of article 1991, then the refusal to appoint the ordinary executor also amounts to annulling such a provision of the will.

Is it required by reason of article 1991 to let the executor be appointed because the will so directs, or even because it gives him certain specified duties and responsibilities, and then by separate proceeding remove him? The law provides that for certain things he may be removed without notice. If so removed, the court is doing indirectly what it is contended cannot be done directly, because articles 1992 and 1993, relied upon by appellee, provide for notice before any provision of the will can be annulled. Again, an independent executor is removed for failure to give bond. The allegations of the pleading would charge waste, mismanagement, or misapplication, and the proceeding would be essentially different from that prescribed by article 1991, yet the executor is removed for failure to give bond, and a provision of the will is rendered nugatory.

A distinction should, we think, be made between provisions and directions of a will which are to be "executed," as provided by article 1991, and the person appointed to execute them. No matter how strong the reasons actuating the decedent for having a certain person execute the provisions of his will, if that person is a minor at the time the will is probated, the court will not appoint him executor. So, too, we think other grounds should be permitted to be considered in regard to the fitness of the person appointed to execute the provisions and directions of the will.

A person's power to dispose of property by will is limited by the fact that, aside from exemptions, his creditors are entitled to have their claims paid. His bequests may be rendered unavailing because the creditors are entitled to his estate, and so his appointment of an executor may be disregarded where necessary to protect his creditors.

Article 1870 provides: "Any person interested in an estate may, at any time before any application, petition, exhibit, account, claim or other proceeding is decided upon by the court, file opposition thereto in writing, and shall be entitled to process for witnesses and evidence, and to be heard upon such opposition as in other suits."

It is true there is no statute expressly providing for contesting applications for letters testamentary as there is for contesting applications for letters of administration. See article 1929. This latter article was first adopted by the act of March 20, 1848, while article 1870 was adopted by the act of August 9, 1876, and is apparently designed to

cover all cases which might be regarded as unprovided for by law.

[9] We conclude: (1) That the statutory disqualifications of minority and insanity are not the only ones which may be considered by the county judge. (2) That application being made to be appointed executrix and contest filed thereto setting up sufficient grounds to disqualify her, if proved, the court was authorized to determine the issues raised. (3) That therefore the duty to appoint the relator executrix did not become a ministerial one. We think these conclusions follow naturally from what has been held by the Supreme Court in the cases of Roy v. Whitaker and Stevens v. Cameron, supra, and that they accord with the true intent of our probate statutes. We are therefore of the opinion that the judgment of the lower court commanding the entry of an order permitting relator to qualify as executrix was erroneous.

The assignments of error all question whether the judgment is authorized. Having held the judgment unauthorized, the next question which arises is whether the findings are such as to entitle appellant to have the judgment reformed so as to require the county judge to set the matter for hearing, and to proceed to pass upon the same. The findings are silent as to whether an application in accordance with the statute was made by contestants for a continuance, also whether a motion was made by relator to the court to set the hearing for some definite time. Respondent, in his sworn answer, says no such motion was made.

[10] There is no evidence and no finding concerning the diligence used by contestants to procure the evidence desired. The judge saw fit to postpone the hearing by an order which amounted to an indefinite postponement, and which is not authorized by law. If sufficient ground was shown, he could have continued the matter for the term, and his discretion in the matter would have been very great. At the time the petition for mandamus was filed, the postponement had lasted 6 days; at the time it was passed upon, it had continued for 11 days. No effort is shown to have been made to induce respondent to set the matter for a definite time.

[11] "Mandamus being an extraordinary writ, with prerogative features, and not a writ of right, a strong case must be presented to coerce action by a judge; the presumption being that he has done his duty. There must always be a previous request to act, and a definite, unqualified refusal, before the writ will issue." Cyc. vol. 26, p. 193.

We think it should be assumed that the county judge acted fairly, as he saw the situation, and that he was holding up the order continuing the case with the hope of getting the evidence in time to avoid a continuance for the term.

In our opinion the evidence is not suffi-cient to warrant us in reforming the judgment so as to require the respondent to proceed to try the matter. In passing upon the facts, we pass upon them as they existed at the time of the trial.

The judgment of the district court will be reversed, and judgment here rendered that the petition of relator be denied, and that respondent recover of relator all costs of suit; but this judgment is without prejudice to relator's right to hereafter procure a writ of mandamus to compel respondent to proceed to try the matter if the facts warrant it.