BOYNTON v. BROWN et al. †

(Court of Civil Appeals of Texas. San Antonio. Feb. 18, 1914. Rehearing Denied March 4, 1914.)

1. MANDAMUS (§§ 145, 146*)—CALLING ELECTION—PARTIES.

Under the Enabling Act (Acts 33d Leg. c. 147), giving a prescribed number of voters the right to demand an election by petition, one or more of the petitioners could apply for, and, under proper circumstances, obtain, a writ of mandamus compelling the calling of the election, which suit could be prosecuted in the name of the state or of the relator.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 286, 287; Dec. Dig. §§ 145, 146.*]

2. MANDAMUS (§ 74*)—GROUNDS—MINISTERIAL ACT.

Mandamus lies to compel the performance of official duties which are imperative and unaccompanied with an element of discretion, and courts will extend relief to compel the holding of a municipal election where the duty is clearly obligatory and has been disregarded.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 150–157; Dec. Dig. § 74.*]

3. MANDAMUS (§ 70*)—JUDICIAL ACT—MUNICIPAL ELECTION.

Under the Enabling Act (Acts 33d Leg. c. 147), which provides that the governing body of any city of more than 5,000 inhabitants, upon petition of 10 per cent. of the qualified voters, shall provide by ordinance for the submission of the question whether a commission shall be chosen to frame a new charter, but which does not expressly provide for the determination of the number or the qualification of the petitioners, it was for the council to determine such matters in the exercise of its own judgment, and, where its action was based upon reason and fairness, and not upon fraud, caprice, or unfairness, mandamus will not lie to review such determination.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 132; Dec. Dig. § 70.*]

4. MANDAMUS (§ 70*) — "MINISTERIAL ACT" AND "JUDICIAL ACT" DISTINGUISHED.

The distinction between "ministerial" and "judicial" acts is that, where the law prescribes the duty to be performed with such certainty as to leave nothing to the exercise of judgment or discretion, the act is a "ministerial act," but, where the act involves the exercise of discretion or judgment in determining whether the duty exists, it is a "judicial act."

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 132; Dec. Dig. § 70.*

For other definitions, see Words and Phrases, vol. 5, pp. 4523–4525; vol. 8, p. 7722; vol. 4, pp. 3848–3853; vol. 8, p. 7697.]

5. MANDAMUS (§ 154*)—ELECTION—SUFFICIENCY OF PETITION.

Under the Enabling Act (Acts 33d Leg. c. 147), requiring the governing authority of any city, upon petition of 10 per cent. of the qualified voters, to provide for an election on the question whether a commission shall be chosen to frame a new charter, leaving the determination of the number and qualification of the petitioners to the discretion of the city council, a petition for mandamus to compel an election failing to allege that the action of the council was arbitrary or fraudulent stated no cause of action; the allegation that the council's act was without any legal excuse and without giving any reason for their action being a mere conclusion and totally insufficient as an allegation of fraud.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 296–316; Dec. Dig. § 154.*]

6. MANDAMUS (§ 6½*)—GROUNDS—ADEQUACY —LEGAL REMEDY.

While mandamus issues only when the aggrieved party has no other adequate remedy, it is not true that when he has no other remedy he may resort to the writ of mandamus.

[Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 6½.*]

7. ELECTIONS (§ 34*)—PETITION FOR ELECTION—REFUSAL.

Under the Enabling Act (Acts 33d Leg. c. 147), providing that the governing authority of cities of more than 5,000 inhabitants upon petition of 10 per cent. of the qualified voters shall provide by ordinance for an election on the question of a commission to frame a new charter, the refusal of the mayor and council to call such election was not void because evidenced by resolution instead of an ordinance, since where the election was not called the form of refusing the petition was immaterial.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 24; Dec. Dig. § 34.*]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Mandamus by Alexander Boynton against Clinton G. Brown, Mayor, and Jack W. Neal and others, Aldermen of the City of San Antonio, to compel them to order an election. Decree for defendants, and plaintiff appeals. Affirmed.

See also, 163 S. W. 599, 164 S. W. 897.

E. P. Lipscomb, of San Antonio, for appellant. Geo. R. Gillette and R. J. McMillan, both of San Antonio, for appellees.

FLY, C. J. This is an application by appellant for a mandamus to compel Clinton G. Brown, mayor, and Jack W. Neal, George W. Saunders, F. A. Chapa, John W. Warren, U. H. Rische, Robert F. Uhr, W. L. Hoefgen, J. R. Baldwin, Albert Steves, Sr., J. R. Lambert, C. T. Fincham, and Leo M. J. Dielmann, aldermen of the city of San Antonio, to order an election submitting the question, "Shall a commission be chosen to frame a new charter," as required by an act of the Thirty-Third Legislature at its regular session in March, 1913. The petition copies the provision of the law of 1913 (Acts 33d Leg. c. 147), known as the "Enabling Act," which provides (section 2) that "the legislative or governing authority of any incorporated city, having more than 5,000 inhabitants, may by a two-thirds vote of its members, or upon petition of ten per cent. of the qualified voters of said city, shall provide by ordinance for the submission of the question, 'Shall a commission be chosen to frame a new charter?'" And it was alleged that the city of San An-

tonio is incorporated and has more than 5,000 inhabitants and that there were 12,222 qualified voters in May, 1913, when the last regular city election was held in San Antonio; that in November, 1913, appellant with many others "aggregating more than 1,600 voters and more than ten (10) per cent. of the qualified voters of said city signed and caused to be filed with the said city, and its council, which, under the charter of said city, is made the legislative or governing authority of said city, a petition in conformity with and in compliance with all the provisions of said law, petitioning that said city council provide by ordinance for the submission of the question, 'Shall a commission be chosen to frame a new charter?' which petition has been ignored and refused by said city council, and said city council has refused to provide by ordinance or otherwise for the submission of said question, and has refused to submit the same, or make any provision therefor, as required by law; that respondents, without any legal excuse, and without giving any reasons for their action, have refused and failed and continue to refuse and fail to submit said question, or to make any provision whatever therefor." It was also alleged: That the city council were "seeking to thwart said purpose and have constituted and appointed themselves a committee, to prepare certain amendments to the old charter of said city, the purport and character of said amendments being unknown to relator, and being kept a secret by defendants and no official publication thereof being made, all for the purpose of evading and making null the said law and violating the same in letter and spirit, and using the machinery of said city for their own selfish designs and political purposes; and, in pursuance thereof, have stated that they will call an election to be held on or about the 24th day of February, 1914, in the city of San Antonio, for the purpose of voting on said proposed amendments surreptitiously and illegally prepared by them. That if such amendments, so surreptitiously and illegally prepared, are submitted, the effect thereof will be to confuse and make uncertain the charter of said city and operations of the government thereof, to the great and irreparable damage and injury of relator and said taxpayers and qualified voters thereof. That he and they have no adequate remedy at law, and irreparable damage and injury will result to him and them, unless the respondents herein are at once ordered by writ of mandamus to comply with the requirements of said law, as aforesaid." A writ of mandamus was prayed for. Appellees answered by general and special exceptions and answered fully traversing the facts that were pleaded by appellant. It was alleged that the petition presented to the city council was not the petition of 10 per cent. of the qualified voters, that it contained the names of many parties who were not qualified voters of San Antonio, that it had names signed to it that were not signed by the parties named, that in at least 60 instances the same parties signed the petition many times, that in considering the petition the council had to determine many issues of fact as to residence of the signers and their qualification to vote, to determine the number of qualified voters in the said city at that time, and that in the exercise of their judgment and discretion they ascertained and determined the petition did not constitute one made by 10 per cent. of the qualified voters. It was further alleged that on January 15, 1914, an ordinance had been passed submitting amendments to the charter for the adoption or rejection of the people at an election to be held on February 24, 1914. A number of special exceptions to the answer were filed.

The exceptions filed by both parties were overruled, and the court, upon consideration of the petition and answer, "concluded that the questions of what number of qualified voters there were in the city of San Antonio on the date of the filing of the petition with the city council, * * * and also the question of whether or not the petition so presented to the city council was the petition of 10 per cent. of the qualified voters residing within the city limits of the city of San Antonio, were questions which were judicial in their nature and were not merely ministerial acts; and respondents' answer having disclosed that said petition had been considered and the facts inquired into, and that the city council had deemed the same insufficient and had refused to grant the prayer contained in said petition; and there being, in the opinion of the court, no allegation in relator's petition raising the issue that such action of the council was arbitrary or that their action was attended with any unfairness in the investigation of the facts, or that there was any abuse on their part in the exercise of the powers conferred upon them by law—the court was of opinion that it had no power to enter upon an original inquiry as to whether or not said petition did in fact contain 10 per cent. of the qualified voters within the city limits of the city of San Antonio at the time the same was filed with the city council and thereupon dismissed the petition for mandamus." A decree was accordingly so entered.

This cause was filed in this court on February 2, 1914, and on February 4th, appellant applied to this court for a temporary writ to restrain the city council from holding the election on February 24th, which was refused in a written opinion on the ground that this court did not have the jurisdiction to grant an injunction in this case. Afterwards, a temporary injunction was applied for to the district court and denied, and an appeal from the order taken to this court. The matter of injunction is so indissolubly connected with and dependent upon our decision in the mandamus case that both cases

were submitted and will be considered together, as well as another application for injunction filed in this court to prevent the district court from taking any action in regard to the injunction which had been previously denied and had been appealed to this court.

[1] The act hereinbefore referred to gives the requisite number of voters the right to demand an election by petition, and it is settled in this state that one or more of the petitioners can apply for and, under proper circumstances, obtain a writ of mandamus, and the suit can be prosecuted in the name of the state or that of the relator. Kimberly v. Morris, 87 Tex. 637, 31 S. W. 808; Sweeney v. Webb, 33 Tex. Civ. App. 324, 76 S. W. 766.

[2-4] The rule is thus stated in High's Extr. Rem. § 401: "In conformity with the fundamental principle that mandamus lies to compel the performance of official duties which are imperative in their nature and unaccompanied with any element of discretion, the courts will extend relief to compel the holding of a municipal election when the duty is clearly obligatory and has been disregarded by the officers intrusted by law with its performance." Under the operation of this rule, whenever the law directs an officer or officers to order an election when a certain number of qualified voters have joined in a petition for the same, it is made the duty of the officers to ascertain whether the requisite number of voters have joined in the petition, and whether they are qualified, and mandamus will not lie to control them in the exercise of that duty; but the officers upon whom is devolved the duty of calling the election will be allowed to exercise their own judgment. Their action must be based upon reason and fairness, however, and not be impelled by fraud, caprice or unfairness. High, Extr. Rem. § 58; Merrill on Mandamus, § 112; State v. Commissioners, 8 Nev. 309; State v. County Com'rs, 10 Neb. 32, 4 N. W. 373; United States v. Edmunds, 72 U. S. (5 Wall.) 563, 18 L. Ed. 692; Cullem v. Latimer, 4 Tex. 329; Arberry v. Beaver, 6 Tex. 457, 55 Am. Dec. 791; Bledsoe v. Railway, 40 Tex. 537; Sansom v. Mercer, 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505; De Poyster v. Baker, 89 Tex. 155, 34 S. W. 106; Shook v. Journeay, 149 S. W. 406.

The cited case of Sansom v. Mercer is a leading one on the subject of issuing writs of mandamus to require officers to call elections. That cause was decided under article 575, Sayles' Statutes, which provided that, whenever 50 qualified voters of any territory within the limits of any incorporated town should sign and present a petition to the mayor asking that such territory should be segregated from the town, it should be the duty of the mayor to order an election on the request of the petitioners. Eighty-one persons filed a petition with the mayor of Alvarado, Tex., praying that certain territory be declared no longer a part of the town,

and he refused to call the election. A writ of mandamus was sought to compel him to call the election. It was alleged in the petition that the 81 petitioners were qualified voters and that the mayor, "without any legal excuse and without giving any reasons for his action, refused and failed to order said election." The court held: "It is well settled that, if the duty an officer is called upon to perform requires the exercise of an act of judgment on his part, his decision is not subject to be revised by a proceeding for a writ of mandamus. * * * And it is apparent that, in a proceeding to procure an order for an election under the statute before cited, the mayor is required to determine two facts in order to justify him in making the order for the election: First, that there is a surplus of territory over the limit prescribed by the statute; and, second, that at least 50 qualified voters of that territory have signed the petition. If there be any controversy as to the existence of these facts, his function is discretionary, and he cannot be compelled to order the election." The mandamus was granted in that case because there was no answer filed, but the facts alleged in the petition were admitted to be true by the filing of a demurrer. That case has often been approved in and out of this state.

In the case of Commissioner v. Smith, 5 Tex. 479, it is said that the "distinction between ministerial, and judicial and other official acts, seems to be that where the law prescribes and defines the duty to be performed, with such precision and certainty as to leave nothing to the exercise of discretion, or judgment, the act is ministerial; but, where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial." In this case the petition was presented under the statute of 1913, herein cited, in which the governing body of a city of more than 5,000 inhabitants is required to order an election, when a petition signed by 10 per cent. of the qualified voters is presented. Under that law, as under the article cited in Sansom v. Mercer, the city council was to determine whether the signers to the petition were qualified voters, and in addition whether they constituted 10 per cent. of the qualified voters of the city of San Antonio, in order to justify the calling of an election. Some one had to determine these matters, for no election upon petition could legally be called except on a petition of a certain number of the qualified voters at the time it was presented, and no one else had that authority except the city council. To hold that the city council had no authority to ascertain those facts would be to hold that the council was compelled to call an election, although the petition was not signed by qualified voters, or an insufficient number of them, and put the people of San Antonio at the mercy of people in no way interested in the welfare of the city. The law

creates an uncertainty when it speaks of "qualified voters," and it leaves the time indefinite as to when the enumeration of the voters should take place, and no authority had the power to decide those matters at the time when the petition was presented, if the council did not.

[5] There was no allegation in the petition that the city council acted arbitrarily, unreasonably, capriciously, or fraudulently. The allegation that the action of appellees was "without any legal excuse and without giving any reasons for their action" was totally insufficient. It was merely a conclusion of the pleader. City of Houston v. Smith, 12 Tex. Civ. App. 120, 34 S. W. 194. Appellees were not required at the time that the petition was rejected to give reasons for their action. The reasons were fully given in the answer to the petition. The court might well have sustained a demurrer to the petition, because its allegations did not show any fraud or unfairness, and the law vested discretion in appellees as herein indicated, but he overruled the exceptions, and the cause was submitted on the petition and answer. Appellant did not ask to introduce any evidence, and the court properly refused the mandamus.

[6] It may be that appellant has no adequate legal remedy, but that would be no argument in a case where it is sought to compel a judicial rather than a ministerial act. "It is well settled that, while mandamus issues only when the aggrieved party has no other adequate remedy, the converse of the proposition is not true, that when he has no other remedy he may resort to the writ of mandamus." Ewing v. Cohen, 63 Tex. 482.

In the case of Shook v. Journeay, 149 S. W. 406, the principles applying to mandamus are thoroughly and ably discussed by Associate Justice Moursund, for this court, and it is clearly shown that courts or officers when given discretion to act cannot be compelled to act contrary to their views on discretionary matters, even though the action taken by them has been wrong. The decision in that case was reversed by the Supreme Court, not on the ground that the general principles stated therein were not correct, but on the ground that it was the imperative duty of the clerk of the county court to issue letters testamentary to an executor, losing sight, it would seem, of the discretion and authority vested in the county court in regard to letters testamentary, by articles 3293 and 3295, Rev. Stats. In the first article mentioned the county court is required, before granting letters testamentary, to ascertain six things; the last being "that the person named as executor is not disqualified by law." The question as to the right to mandamus the clerk to issue the letters after the county court had so ordered was not before this court, but the question was whether the county judge could be compelled to appoint a person deemed unfit by him as executor, and, because the law vested in him the power and authority to pass upon the qualifications of the person named in the will as executor, this court held that it was a matter of discretion with him and a mandamus would not lie to compel him to appoint a person not deemed by him to be qualified. We have thought it not inappropriate to discuss the case of Shook v. Journeay, because the opinion of the Supreme Court leads to the view that this court held that, although no discretion was vested in the county court in regard to the appointment of executors, mandamus would not lie, when the law clearly clothes the county judge with discretion to reject an executor and the clerk has no authority to issue letters until ordered by the county court. As in that case, so in this, we hold that, where discretionary powers are given by law to officers, a mandamus will not lie to compel different action from that taken by them.

[7] It is contended that the action of appellees in refusing to call the election was null and void because they acted through a resolution instead of an ordinance. We know of no law requiring action in refusing to call the election to be evidenced by ordinance; but, if the "Enabling Act" should require it, appellees have not refused, as alleged by appellant, to call the election, and there has been no action by appellees on the petition, and appellant's action should have been to compel them to act on the petition. No form, however, is necessary in refusing the petition provided for in the act, but it is only in case of the election being called that the requisite forms are prescribed. The reason is apparent, because it is absolutely necessary that formal matters should be attended to if the election is called; but it is a matter of no consequence, if the election is not called.

For the reasons given, the judgment of the district court is affirmed.