**BLACK et al. v. COONS.   (No. 6809.)**

(Court of Civil Appeals of Texas.   San Antonio.   Nov. 8, 1922.)

Mandamus $\Longleftrightarrow$74(2)—Will not lie to compel city commission to call special election to amend charter, unless petition therefor shown arbitrarily denied.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1096a, giving cities having more than 5,000 inhabitants the authority by majority vote of qualified voters to amend their charter, and article 1096b thereof providing the method of obtaining an election thereon, mandamus to compel the governing body of such city to call an election to amend charter relating to recall of city officers, after petition of ten qualified voters should be denied, unless such governing body, which is vested with discretion in deciding who are qualified voters, had absolutely denied the petition and in so doing acted arbitrarily, unreasonably, capriciously, or fraudulently.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Mandamus by J. C. Coons against O. B. Black and others, to compel defendants, City Commission of San Antonio, to call an election to amend the city charter relating to the recall of its officers. From an order granting the writ, defendants appeal. Reversed and cause dismissed.

T. H. Ridgeway and R. L. Marshall, both of San Antonio, for appellants.

Eskridge & Williams, John Sehorn, and Edwin Sehorn, all of San Antonio, for appellee.

FLY, C. J.   This is an appeal from an order of a district court granting a writ of mandamus to compel appellants, who compose the city commission, the governing body of the city of San Antonio, to call an

election to amend the charter of said city in regard to section 128, which relates to the recall of city officers.

The petition for mandamus alleges that the petitioner is a citizen of the city of San Antonio, and that he with other citizens, on January 12, 1922, presented to the mayor and commissioners of the city at a regular meeting a petition for an order for an election to amend the charter, which petition was signed by more than 10 per cent. of the duly qualified voters of the city. The petition is set out in hæc verba and is followed by this averment:

"And plaintiff avers that it thereupon became the duty of said defendants, as said board of commissioners of the city of San Antonio within a reasonable time to order an election in the manner prescribed by article 1096b, Vernon's Sayles' Revised Civil Statutes of the state of Texas, for the purpose of submitting to the qualified voters of the city of San Antonio the proposed amendment of said section 128 of the city of San Antonio for their adoption or rejection; but, notwithstanding a reasonable time has elapsed since said petition was presented, said defendants have hitherto failed and refused and still fail and refuse to order such election, and plaintiff verily believes and charges the fact to be that said defendants will continue to fail and refuse to order such election unless compelled to do so by mandamus."

Article 1096a, Vernon's Sayles' Stats. gives cities having more than 5,000 inhabitants the authority, by majority vote of the qualified voters, to adopt or amend their charter, and in article 1096b provides the method of obtaining an election on a charter or amendment thereto. It is provided that the legislative or governing body may on its own motion submit amendments, and that on the petition of at least 10 per cent. of the qualified voters of said city shall submit any proposed amendment or amendments. An amendment through petition must be requested by at least 10 per cent. of the qualified voters, and the question of deciding who are qualified voters is necessarily confided in the governing body that is empowered to call the election. The law clearly invests that body with discretion in deciding who are qualified voters on the petition, and a mandamus compelling that body to act and call an election cannot be legally issued unless it is alleged and proved that the city counsel or commission had absolutely denied the petition, and in so doing had acted arbitrarily, unreasonably, capriciously, or fraudulently. No such allegation was made in this case, except in a trial amendment, and there was no proof whatever to indicate that the commission so acted.

No action had been taken on the petition by appellants, either to call the election or refuse it, and no mandamus was asked to compel the body to act in the exercise of its discretion, but the prayer was for an order commanding the commission to call the election. The discretion of the district judge was substituted for that of the only body given the authority to pass on the qualifications of the signers of the petition. The evidence showed that the city clerk and several assistants were engaged in checking the names of the signers when they were halted by this suit, and, before the city government could satisfy itself as to the qualifications of the signers, a writ of mandamus was issued commanding the calling of an election.

Every material point raised in this case was fully discussed by this court in the case of Boynton v. Brown (Tex. Civ. App.) 164 S. W. 893, and the decision was adverse to the positions assumed by appellee in this case. In that case, as in this, a mandamus was sought to compel the city government of San Antonio to call an election on the question of framing a new charter. In that case, as in this, it was alleged that a petition for an election had been signed by at least 10 per cent. of the qualified voters of the city of San Antonio, that the city council had, "without any legal excuse and without giving any reasons for their action," refused to call the election. The allegations in that case were more explicit and clearer than in this. It was denied in that case, as in this, that 10 per cent. of the qualified voters had signed the petition, and the same defenses were set up in that case as in this. The district judge in that case heard the pleadings and facts and concluded that the questions of what number of qualified voters there were in the city of San Antonio on the date of the filing of the petition with the city council and the number of such voters who had signed the petition were matters to be determined by the council. The trial court was sustained by this court.

The evidence clearly shows that there was a controversy as to whether 10 per cent. of the qualified voters had signed the petition copied into the petition in this case, and the city government had the right to determine that question before action was taken. There is no testimony that sustains the conclusion of the pleader in the trial amendment that the failure to call the election within about 18 days after the petition was filed "was arbitrary, capricious, and fraudulent." No facts are alleged or proved tending to show an arbitrary, capricious, and fraudulent refusal to call an election, but the facts tend to show that a good-faith investigation was then going on by the commission as to the qualifications of the signers, and this investigation had been and was being prosecuted when this suit was filed. The court found that appellants had failed and refused arbitrarily and unlawfully to call an election, and they are ordered, whether satisfied that the necessary number of

qualified voters had signed the petition or not, to call an election. There was no proof of refusal to call the election.

As said in Sansom v. Mercer, 68 Tex. 488, 5 S. W. 62, 2 Am. St. Rep. 505:

"It is well settled that if the duty an officer is called upon to perform requires the exercise of an act of judgment on his part, his decision is not subject to be revised by a proceeding for a writ of mandamus."

The effect of that holding is that even where there is a direct refusal to call an election a mandamus should not be issued. unless there is evidence clearly showing that the refusal was arbitrarily, capriciously, or fraudulently made. As the court says:

"If there be any controversy as to the existence of these facts, his function is discretionary, and he cannot be compelled to order the election.

It cannot be consistently contended that there was not a controversy as to the qualifications of the signers, and, whether there was or not, the duty devolved upon the commission to ascertain if the petition was signed by a sufficient number of voters before calling an election. The fact that a week may have elapsed after the filing of the petition before the work of checking up the signers was begun would have no probative force in showing that the call for the election was being arbitrarily ignored. For two weeks before this suit was instituted, the work of investigating the qualifications of the signers of the petition was being diligently prosecuted. At the very time when it was decreed that an "arbitrary and illegal" refusal had been made by the city commission, they, in the exercise of the discretion conferred upon them by law, were endeavoring to ascertain the qualifications of the signers. That the failure to begin an investigation until a week had elapsed could not have been capricious, illegal, or arbitrary is shown by the evidence of appellee's witnesses to the effect that the mayor was endeavoring to make a compromise with those engineering the petition, so as to avoid the trouble and expense of an election. When that failed, no time was lost in examining into the qualifications of the signers. As held in Boynton v. Brown:

"Some one had to determine these matters, for no election upon petition could legally be called except on a petition of a certain number of the qualified voters at the time it was presented, and no one else had that authority except the city council."

The court, however, took the determination of that question away from the tribunal legally authorized to determine it, and determined it for the city commission. The court on a proper petition, backed by competent testimony, might have commanded the city commissioners to proceed expeditiously to perform the duty of ascertaining the status of the signers of the petition, but could not interrupt them in the discharge of a duty devolved upon them by law, and command that an election be called.

We need not discuss the different assignments of error, because we have arrived at the conclusion that appellee neither alleged nor proved any facts entitling him to a writ against public officers, which should never be issued unless the plaintiff makes out a clear case. This proposition is clearly advanced and fully and conclusively considered by Judge Roberts in the case of Railway v. Randolph, 24 Tex. 317, in which it was held:

"This remedy is not permissible in any case, unless the duty of the officer, to do the act required is plain, in the opinion of the court. Now, if the duty be plain, why should we not suppose that these high executive officers are as capable of discerning it, and as anxious to do their duty, as the district judge, or any other judge or court. They have equal, if not much greater, means of ascertaining the true facts of the case; they have a legal adviser; they are selected for their judgment and discretion in such matters; their sense of duty is equal; they equally act under an oath of office. * * *"

The opportunity should have been given the commission to perform its statutory duty in the investigation of the right of the petitioners to request a vote by the people on an amendment to the charter desired by them. A full investigation of the qualifications as voters of the petitioners was demanded by the interests of possibly 175,000 inhabitants of the city of San Antonio, who should not be forced to incur the expense or bear the burdens arising from an election sought by a minority, unless such minority is fully qualified under the law to make that request. The city commission has been authorized and commanded by law to make the investigation, and, in the reasonable discharge of that statutory duty, should not meet with interference at the hands of the judiciary.

The judgment is reversed, and the cause dismissed.