## ETTING *v.* The SCHUYLKILL Bank.

1. Protest of a foreign notary not evidence of a demand of payment of a promissory note.
2. A notice dated on the second day of grace, stating a demand on that day, will not bind an endorser.
3. An entire day is allowed for transmitting a notice by every endorser, and a direct notice which reaches an endorser as soon as he would have received it by regular transmission through all the parties, is sufficient, though they live in the same town; but a delay beyond the day by any one endorser, will discharge the prior parties.

ERROR to the District Court of the city and county of Philadelphia.

*April* 8. This action was against the second by the third endorser of a promissory note. The first three endorsers resided in Philadel-

phia; the fourth in New York; the fifth at Newark, N. J.; and the place of payment was Elizabethtown.

The last day of grace was the 4th October, 1839; the sixth, was Sunday. The protest was made on the 4th, and the notice dated the 3d, describing the note by its amount, and the name of the drawer, and the protest "made this evening," was received on the 8th from the notary by defendant. The court left it to the jury to say, whether evidence of the protest on the fourth from the official certificate of the protest, was avoided by the date of the notice. If they did not think the evidence in the notice destroyed that on the face of the protest, they must find for plaintiff on this point. As to the time, every party had twenty-four hours to transmit the notice; hence it was in due time.

*Meredith*, for plaintiff in error.—The present party is obliged to resort to this, as his prior endorser has notified him of his intention to contest the matter. The right to a day to transmit notice does not prevail where the parties reside in the same town; it is intended to allow time for mailing. But here the notice was defective, because it stated a protest on the day before the last day of grace; and this is a material fact, and must be stated correctly, Story on Promissory Notes, 349, 299, 330. The court erred in leaving to the jury the question, whether the protest was made on that day or on the 4th; the evidence was in writing of equal force, neither being official. The jury could only guess at the truth.

*R. Hare*, contrà.—It was a mere mistake of the date; no injury was done; in fact, it was perfectly immaterial, 1 Bay. R. 517. If there was no date, certainly it would be a valid notice.

*April* 14. GIBSON, C. J.—The notarial certificate of protest was evidence of the fact of protest, but of nothing else; for our statute, which declares that the official acts, protests, and attestations of notaries public certified under hand and seal, shall be evidence of the facts certified, is expressly restrained to the certificates of notaries "acting by the authority of this Commonwealth." The certificate before us, therefore, was not evidence of demand on the maker of the note; and as evidence of the mere fact of protest, which is superfluous in the case of a promissory note, it was immaterial. As there was no other evidence of demand and non-payment, either on the last day of grace or any other, the jury ought to have been instructed that the plaintiff had failed in his proof on that ground.

The notice of non-payment also was vicious. It bore date the evening of the day which preceded the last day of grace, and the defendant was consequently informed by it of nothing more than that the note

had been presented and protested for non-payment before it was due—a blunder with which he had nothing to do, and which he was not bound to notice.   He had a right to presume that it would be discovered, and that the note would be again presented for payment at the day; of the event of which he would be informed, should it be necessary, in due season.   Hearing no more about the matter, he had a right to repose on a belief that the note was paid.   It is true, that it had in fact been presented for payment at the proper time; and that the notice was misdated by mistake; but how was he to know that? He might as well presume that the notary had mistaken the day of payment, as that he had mistaken the date of the notice.   But with any mistake as to either, he had nothing to do.   He was entitled to have explicit notice of the very truth; and the consequences of wanting it are not to fall on him who was not the cause of them, but on the holder, by whose agent they were occasioned.

Had the notice been truly dated, the service of it would have been in time.   The general rule is, that when it is given by the holder directly, it is soon enough, if it reach the particular endorser, as soon as it would have reached him circuitously through the subsequent endorsers, each of whom are entitled to an entire day, if he chose to insist on it, to hand it on; the only limitation to which, is stated in Marsh *v.* Maxwell, 2 Camp. 210, note, by Lord Ellenborough, who said, "It is enough that the drawer or endorser receive notice in as many days as there are subsequent endorsers, unless it is shown that each endorsee gave notice *within* a day after receiving it; as if any one has been beyond the day, the drawer and prior endorsers are discharged;" in other words, that there shall not be a longer link in the chain than the space of a single day, and that the holder shall not affect the endorser with notice after he has been discharged from liability to the subsequent endorsees.   In this case there was no evidence of circuitous notice, and a day was properly allowed for each intervening party.

Judgment reversed.