Antonoff v. Zolyan.

Argued October 16, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Theodore F. Jenkins,* and with him *Mayne R. Long-
streth* and *Augustus Trask Ashton,* for appellants.

*Herman J. Tahl,* for appellee.

OPINION BY KELLER, J., January 28, 1932:

We agree with the learned court below that these
appeals are ruled in principle by the decision of the
Supreme Court in Phila. v. Anderson, 142 Pa. 357. In
that case an intending purchaser of real estate ob-
tained, through his conveyancer, a certificate of search
from the receiver of taxes showing that no unpaid
taxes were registered against the property for the
year 1875. Afterwards the city filed a municipal claim
against the property for the 1875 taxes, and on scirè
facias, the Supreme Court held that the certificate of
its officer estopped the city from collecting the tax
from the purchaser. The certificate in that case was
written directly below the order of Passmore William-
son, the conveyancer, (which did not name his prin-
cipal), directing the receiver of taxes to "Certify any
taxes registered against the above [described real
estate] in the name of Franklin C. Paxson, or that of
any other person."

In its opinion the Supreme Court distinguished the
act of the receiver of taxes in such case from the negli-
gence of the city surveyor in locating the lines of a
lot, (Alcorn v. Phila., 44 Pa. 348), and said: "But the
collection of taxes is a municipal purpose. They are
levied, collected and disbursed under the authority
and direction of the city, by officers appointed or
elected for the purpose, who represent the city. When
levied, the duplicates are charged to the receiver. He is
the only authorized collector and receiving officer. He
is required to open his books for the receipt of taxes on

the first day of January of the year for which the taxes are assessed. His daily collections must be reported to the city controller, and his daily cash receipts deposited in the banks designated for that purpose. Taxes not paid during the year or within fifteen days thereafter he is required to enter upon the register of unpaid taxes, in order to continue their lien. If this is not done, the lien ceases, and the real estate may pass, by sale, discharged therefrom, Smaltz v. Donohugh, 11 W. N. C. 220. The entries on the register, if made in time, are valid liens on the real estate affected by them, and must be taken notice of and provided for in case of sale. These liens are not the result of legal proceedings in a court of record, which are notice to everybody, but of the act of the city in carrying the unpaid taxes upon the book kept for that purpose in the office of her receiving officer. This is the book of the city, made up by the officials who represent her, and remaining in their custody. It is the evidence of her demands upon real estate within her borders. A purchaser must take notice of this book, and to enable him to know with certainty what appears upon it, the law makes it the duty of the receiver of taxes to certify the liens against any particular piece of real estate. This is a specific duty imposed upon him by law, as the representative of the city, the collector of its taxes, and the custodian of its records. In its discharge he represents his principal; speaks for it, and binds it. If his certificate is false and misleading, one who acts upon it in good faith has a right to insist that the city is bound by it. The city is not above the duty to deal fairly and justly with its citizens, and to speak the truth to them when the duty to speak for their information rests clearly on it.''

We think the reasoning of that opinion is just as applicable to a mortgagee of the real estate as to a purchaser; and that there is no difference in the effect

of the certificate, whether it is obtained by a conveyancer, acting for a purchaser or mortgagee, or by the owner, for the purpose of delivering it to a purchaser or mortgagee. It is given for the very purpose of being produced to a purchaser or mortgagee, for in the hands of the owner himself it is of no effect if the taxes are actually unpaid, for he knows, or is bound to know, whether his taxes are paid, and cannot be misled by the error of the receiver of taxes, whereas the purchaser or mortgagee, for whose use and benefit the certificate is obtained, has no knowledge on the subject, and if the certificate is false or misleading, having acted upon it in good faith, has a right to insist that the city is bound by it.

In the present case, the appellee held a mortgage against premises 314 Poplar Street, which required the mortgagor to produce tax receipts for the property to the mortgagee for inspection on or before November 1, of each year. In January 1929, the appellee called upon the mortgagor to produce the tax receipts for the years 1926 and 1927, threatening that if they were not immediately produced, foreclosure proceedings would be begun. Following this, the mortgagor, on March 7, 1929, procured from the receiver of taxes a tax search in the proper form certifying that no taxes for the years 1926 and 1927 appeared on the official register of unpaid taxes, which he gave the mortgagee. Relying upon this certificate the appellee forbore instituting foreclosure proceedings. In November 1930, following a default, the appellee issued execution on the bond accompanying the mortgage, with damages assessed at $1506.75. The sheriff sold the real estate to the appellee, the mortgage creditor, for $1100, and the receiver of taxes notified the sheriff to deduct from the fund the city and school taxes for the year 1926, amounting to $103.55. A rule was subsequently granted to show cause why the money held by the sheriff should

not be paid to the mortgage creditor, which, following answers by the city and school district, was made absolute by the court below.

The court, in its opinion, properly distinguished between the certificate of the receiver of taxes, as described in Anderson v. Phila., supra, and the certificate of search of the recorder of deeds. (Houseman v. Girard Mutual B. & L. Assn., 81 Pa. 256; Kellogg v. Harmer, 6 Phila. 90), who is liable in damages only to the person who buys the search, and not to others, saying: "For a number of obvious reasons, however, these cases are clearly distinguishable from the case of a search issued by the receiver of taxes. They are actions to enforce the personal responsibility of the officer making and issuing the search, who is in the position of an insurer of the correctness of his work. Hence the risk that he takes must be limited to the person to whom he issues the search, and who pays him to take the risk, and cannot be extended to others who are not party to the transaction, and for whom he has performed no service. His only principal is the person who buys his service, and to him alone is the recorder responsible for negligent work. Again, the books of the recorder are mere records of the acts of citizens which the law requires to be recorded. A person registering a deed or mortgage neither actually nor impliedly authorizes the recorder to issue searches to others on his behalf. The recorder's mistaken certificate, therefore, cannot bind the holder of the mortgage. A receiver of taxes, however, is the official custodian of the City's lien book, and, in issuing searches, acts as the agent of the City in giving out the City's admission as to what the register shows. The cases relied on by the City, therefore, are not pertinent to the question before us. To hold that the benefit of a tax search is limited to the person taking it out, and does not follow down the stream of title from him,

would deny even to the purchaser of the search the benefit it gives him. If he is entitled to take the property freed of the lien because the City's erroneous search misled him into paying the amount of the taxes to his vendor rather than holding them out at the settlement, then, to continue the lien as to subsequent purchasers would only be compelling him to pay the taxes when he subsequently sells the property, for the subsequent purchaser would hold them out at his settlement. Thus the very injury from which the law protects one who acts in good faith upon an erroneous search would be merely suspended, to be visited upon him at a later time. The property, therefore, must be discharged of the lien, not only as to the purchaser of a search, but also as to all subsequent purchasers of the property.

"The mere fact that the search here involved was bought by the defendant, and not by the plaintiff, does not affect the question before us. The search was bought by the defendant for the lawful purpose of exhibiting it to the plaintiff, who stood in such relation to the property that his interest might be affected by acting upon it. The plaintiff had a right to act upon it in good faith, and when later, at the sheriff's sale, he relied upon its information, he was, in our judgment, well within his rights in doing so. Those who have the right to act upon the information given by a search are not required to take out a second search every time they act. They may assume the search is correct, and act upon it, until they have knowledge to the contrary. Any other rule would defeat the obvious equities of the situation."

We think the forbearance of foreclosure by the appellee for nearly two years sufficiently established that he suffered detriment through the erroneous certificate. It was impossible to place him in the exact situation he was in when he received the certificate in March,

1929, or to give him in November, 1930, precisely the same results that would have followed foreclosure in March, 1929. The delay, occasioned by the error of the receiver of taxes, resulted in later defaults to the injury of the mortgagee.

As respects the appeal of the School District of Philadelphia, we think the provisions of the School Code (Act of May 18, 1911, P. L. 309, sections 523-531,) and particularly section 531, make the receiver of taxes the agent of the school district in the collection, registration and certification of unpaid school taxes, with the same effect as he acts for the City, in those respects, with relation to city taxes.

The assignments of error are overruled and the order in each appeal is affirmed at the costs of the appellant.