# FEBRUARY, 1911.

D. F. JONES v. J. T. ROBISON, COMMISSIONER, ET AL.

No. 2093.   Decided February 1, 1911.

**1.—School Land—Forfeiture—Resale—Reinstatement.**

Where a declaration of forfeiture of a purchase of state school land for non-payment of interest has been regularly entered by the Land Commissioner, the purchaser has a right to reinstatement only when no rights of third persons have intervened (Rev. Stats., Art. 4218f). If in the meantime the land has been again placed on the market and awarded to another purchaser who has complied with the law for acquiring it, the Commissioner has no right to cancel such sale and reinstate the first purchaser; and, having done so he can be compelled by mandamus from the Supreme Court to cancel his patent to the first purchaser and reinstate the second.   (Pp. 70-72.)

**2.—Same—Excuse for Nonpayment.**

The fact that a purchaser of school land had been led to make default in payment and suffer forfeiture of his rights by misinformation given to his attorney by the State Treasurer as to the status of the payments, did not affect the title of a second purchaser who bought after the first sale had been cancelled and the land again placed on the market, nor present a question of fact as to the title of the two claimants depriving the Supreme Court of jurisdiction to award mandamus.   (P. 72.)

Original application by Jones to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office, Coleman, an adverse claimant, being also made respondent.

*N. A. Rector,* for relator.

*Jewel P. Lightfoot,* Attorney-General, and *L. A. Dale* and *Sam. D. Snodgrass,* Assistants, for respondent Robison.   *C. C. Clamp,* for respondent Coleman.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

D. F. Jones, relator, complains of J. T. Robison and T. A. Coleman, alleging, in substance, that on June 17, 1909, section 1228, certificate 216, C. C. S. D. & R. G. N. G. R. R. Co., situated in Webb County, Texas, was public free school land and subject to sale under the law controlling such sales.

It is alleged that on April 5, 1901, the said land had been sold to some person who is not named in the petition but subsequently disclosed to have been Jasper Woolridge. Woolridge had transferred it to some other person who had failed to pay the installment of interest due on said land on November 1, 1907, and the land was subject to forfeiture for nonpayment of the interest. At some date after January 30, 1908, which is not given, the treasurer certified to the Commissioner of the Land Office the fact that the interest upon the said pur-

chase had not been paid and thereupon the Commissioner, on August 29, 1908, declared the said land to be forfeited, making proper endorsement upon the application and all entries required by law, and giving notice to the Treasurer in accordance with the statute. The treasurer made a proper endorsement upon his books showing the forfeiture of the claim. Thereafter, on June 17, 1909, the Commissioner appraised the land at $2.00 per acre, placing it on the market for sale to actual settlers.

On June 19, 1909, relator was qualified to purchase the said land under the law then in force and made application to the Commissioner of the Land Office to purchase the same at the appraised price of $2.00 per acre. The land was awarded to him by the Commissioner and he made the payment required by law of 1/40 of the purchase price and executed his obligation in conformity to the statute and settled upon the land, making and returning to the Land Office within due time his affidavit of settlement.

On the 27th day of August, 1909, the Commissioner cancelled the sale made to relator and reinstated the sale made to Woolridge, which was then claimed by T. A. Coleman. The Commissioner of the Land Office answered by general demurrer only. Coleman answered setting up the following facts which are not denied by the relator.

C. C. Clamp, an attorney who resides in San Antonio, represented T. A. Coleman in his land matters and had charge of this particular claim. Clamp wrote to Sam Sparks, the Treasurer, on January 29, 1908, requesting the Treasurer to let him know if any interest was then due and unpaid on the purchase money of the land in controversy and the Treasurer informed him that all of the interest to November 1, 1907, had been paid, when, in fact, it had not been paid to that date and was not paid until after the Commissioner cancelled the purchase of Jones and reinstated the former sale. Clamp usually kept large sums of money in the hands of the Treasurer with instruction to apply it to interest on purchases for which he, Clamp, was attorney; but no direction was given to apply the money to the payment of the interest of this land upon the claim of Coleman, nor does it appear that the Treasurer knew that Clamp represented Coleman nor indeed that he knew that Coleman claimed the land until after the forfeiture had been declared. It does not appear that Clamp had any money in the Treasury at the time the forfeiture was declared.

After the petition for mandamus in this case had been deposited in this court and the motion for leave to file the application had been filed in the court, the Commissioner issued a patent for the land to Coleman and the conveyances from Woolridge down to Coleman were filed in the General Land Office.

By the forfeiture of the Woolridge purchase, which was duly entered according to the provisions of the statute, that right was terminated and the land was open to purchase by another. If, however, before Jones acquired his right by purchase and settlement, Coleman had made application for reinstatement of his purchase, he would have come within the terms of Mound Oil Company v. Terrell, 92 S. W., 451. In that case there was a forfeiture of the purchase under which

the Mound Oil Company claimed and application had been made by another party to purchase the land but that application had not been completed, so that the applicant was entitled, as a matter of law, to have the land reinstated, as no intervening right had vested. The Mound Oil Company, before the perfection of the intervening right, made payment of the interest and all dues upon the purchase under which it claimed and this court held that under those circumstances the company was entitled to a reinstatement of its purchase under this provision of article 4218f of our Revised Statutes, which we copy: "In any cases where lands have been forfeited to the State for the non-payment of interest, the purchasers or their vendees may have their claims reinstated on their written request, by paying into the treasury the full amount of interest due on such claim up to the date of reinstatement; provided, that no rights of third persons may have intervened." There is no intimation in that opinion that the State could be estopped by the action of the State Treasurer in giving false statement of the condition of the account which that office was required to keep with each purchaser of the land.

When Coleman made application to reinstate the sale made to Woolridge, Jones had completed his purchase and had a legal right to the land in controversy which could not be taken from him by the action of the Commissioner of the Land Office. The land was lawfully on the market when Jones made his application to buy it; he made his payment according to the requirements of the statute and settled upon the land, filing his affidavit of settlement within the prescribed time, all of which was completed before Coleman took any steps to reinstate the purchase under which he claims. There can be no case found in our court and none has been cited that would sustain or justify of the Land Commissioner in this case in striking down the legal right of the man who had complied with the law, in order to reinstate the claim which had been forfeited by a failure to comply with its requirements, however much he was misled by the Treasurer.

It is suggested by the learned counsel for respondent Coleman that Sparks, the Treasurer, would be liable to Coleman for damages on account of the misrepresentation of facts as to the condition of the account in his office and that this raises a question of fact which takes the case out of the jurisdiction of this court. If Coleman should seek to hold Sparks responsible in damages for the misstatement of the account in his office, it would make a question of fact between them, but that question could not be litigated in this case and would be wholly irrelevant to any issue before this court.

The Land Commissioner had no authority to cancel the sale made to Jones, therefore, it is ordered that the writ of mandamus issue commanding the Commissioner of the General Land Office to reinstate the purchase of Jones upon the books of his office and that he cancel the patent issued by him to Coleman.