### BOYKIN v. SOUTHWEST TEXAS OIL & GAS CO. (No. 418-3263.)

(Commission of Appeals of Texas, Section B. Dec. 20, 1923.)

1. **Public lands ⊚⟶173(22)—One repurchasing forfeited state land cannot recover statutory allowance from holder of oil prospecting permit issued before repurchase.**

Forfeiture of land sold by the state for nonpayment of interest, as authorized by Rev. St. 1911, art. 5423, restores it to the public domain, notwithstanding the provision for reinstatement of claims on paying the amount due or the provisions of Acts 33d Leg. (1913) c. 160, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5423a), for repurchase by the owner, and one who has been granted a permit to prospect for oil and gas, under chapter 173, on lands so forfeited, is not liable to the owner on his subsequent repurchase for the amount allowed the owner of the surface by section 9 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5904h), after repurchasing the land without the minerals, in view of section 29 (article 5920g).

2. **Appeal and error ⊚⟶1082(2)—Assignments not presented in trial or appellate courts not considered by Commission of Appeals.**

Assignments of error not presented in the trial court, on motion for rehearing therein, or by assignment in the Court of Civil Appeals, except in a motion for rehearing, and not passed upon in any way by either of such courts, cannot be considered, in view of Supreme Court rule 1, subd. (c).

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by M. F. Boykin against the Southwest Texas Oil & Gas Company. Judgment for plaintiff reversed (206 S. W. 216), and he brings error. Affirmed.

Emmett B. Cocke, of San Antonio, for plaintiff in error.

A. T. Folsom, of El Paso, for defendant in error.

HAMILTON, J. Chapter 160 of the Acts of the Thirty-Third Legislature, p. 336 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5423a), provides that:

"In case any of the public free school lands that has been purchased from the state after January 1st, 1907, and prior to January 1st, 1913, on condition of settlement and residence may hereafter be forfeited for the non-payment of interest in the manner now provided by law the owner of such land at the date of forfeiture, provided the forfeiture was made by reason of interest accrued or accruing prior to the passage of this act, shall have the right for a period of ninety days after notice of classification and appraisement of his land, as herein provided, to repurchase any of such tracts, not to exceed one complement of sections upon the terms and conditions prescribed in this act."

The act provides for an appraisement of the land by a board of appraisers created for that purpose, and that, "if such forfeiting owner desires to repurchase the land at the appraised value placed thereon by said board, he shall file his application therefor in the general land office within ninety days after the date of notice of appraisement. * * *"

On May 28, 1912, Boykin purchased sections of land Nos. 148, 150, and 156 from the state. The mineral rights in the land were retained by the state. In due course of time he filed proof of occupancy and improvements. On July 27, 1914, he requested the land commissioner to reappraise the land under the act above noted. On July 30, 1914, the land commissioner forfeited the land for nonpayment of interest. On October 17, 1915, the land was appraised by the board above mentioned. On January 13, 1916, the land was awarded to Boykin under the statute cited above.

Chapter 173 of the Acts of the Thirty-Third Legislature, p. 409, is an act relating

⊚⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to prospecting and developing minerals upon such land, among other land, as the state had theretofore sold or might thereafter sell with reservation of the minerals therein, and providing for the issuance of permits for the purpose of prospecting and developing minerals in such land. Section 9 of this act (Vernon's Sayles' Ann. Civ. St. 1914, art. 5904h) reads:

"In the event any land or water included within the operation of this act has heretofore been or may hereafter be sold by the state with the reservation of minerals therein, or has been purchased by one with the waiver of mineral rights, such land shall be subject to prospect and lease as set forth in this act, but the owner of the permit or lease shall pay to the owner of the surface of the land twenty cents per acre per annum in advance during the life of the permit or lease and the first payment shall be paid to the commissioner of the general land office, for the use of the owner of the surface, prior to the issuance of such permit, and said sum so paid to the owner of the surface rights shall be in full compensation for all damages to such surface by reason of the ingress and egress and operation necessary to development and the operation under the permit or lease; provided, that if the owner or lessee of the surface will not accept the payment of twenty cents per acre per annum as above provided, and the lessee of the mineral rights cannot agree with such owner or lessee of the surface rights on the compensation to be paid for the use of the damages to such surface rights, then the right thereto and the ingress and egress from such mine or mining claim may be acquired by condemnation as hereinafter provided."

After the date of the forfeiture of Boykin's land and before the date of the reaward of the land to him, the commissioner of the general land office issued permits to prospect for oil and gas on the land—on sections 148 and 150, September 10, 1915; on section 156, December 1, 1915. The land commissioner did not collect the 20 cents per acre stipulated in the statute above quoted. Defendant in error, as the holder of these permits, prospected for oil and gas on Boykin's land. Boykin brought this suit to recover $202.84 alleged to be due him under the provision for the payment of 20 cents per acre to the owner, and for $500 alleged to be the value of the water taken from the well bored by defendant in error for use in putting down a well for oil on the land. The case was tried by the court without a jury, and judgment was rendered in favor of Boykin for $202.84. Defendant in error appealed. Boykin filed cross-assignments of error as to the $500 claimed for water. The Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of defendant in error. 206 S. W. 216. Boykin applied for writ of error, which was granted.

[1] It is to be observed that chapter 160 of the Acts of the Thirty-Third Legislature contains no new provisions for forfeiture of lands. It merely refers to lands " * * *" forfeited for the nonpayment of interest in the manner now provided by law," and gives to the owner of such land at the date of the forfeiture, provided the forfeiture was made by reason of interest accrued or accruing prior to the passage of the act, the "right for a period of ninety days after notice of classification and appraisement of his land to repurchase" it. The forfeiture had to take place under the law as already provided. The forefeiture would therefore be followed by the results and consequences flowing from forfeiture in any other case where it resulted from nonpayment of interest. Forfeiture of purchase for nonpayment of interest is provided for in article 5423, Revised Statutes 1911. By the terms of that article:

"If upon the 1st day of November of any year any portion of the interest due on any obligation remains unpaid, the commissioner of the general land office shall indorse on such obligation, 'Land Forfeited,' and shall cause an entry to that effect to be made on the account kept with the purchaser; and thereupon said land shall thereby be forfeited to the state without the necessity of re-entry or judicial ascertainment, and shall revert to the particular fund to which it originally belonged, and be resold under the provisions of this chapter, or any future law."

Under that article, the act of the land commissioner in forfeiting the purchase of land has the effect of restoring the land to the public domain of the state. The provision that "the purchasers, or their vendees, may have their claims reinstated on their written request, by paying into the treasury the full amount of interest due on such claim up to the date of reinstatement, provided that no rights of third persons may have intervened" in no way weakens or affects the proposition that a forfeiture restores the land to the public domain and reinvests the title in the state. Lawless v. Wright, 39 Tex. Civ. App. 26, 86 S. W. 1039 (writ of error refused); Jones v. Robison, 104 Tex. 70, 133 S. W. 879. Likewise, we think the provision in chapter 160 of the Acts of the Thirty-Third Legislature that the "owner of such land at the date of forfeiture * * * shall have the right for a period of ninety days after notice of classification and appraisement of his land * * * to repurchase" it, "in no way weakens or affects the proposition that forfeiture restores the land to the public domain and reinvests the title in the state." This seems to be the view of our Supreme Court. While we have found no case directly in point, expressions by the court in Judkins v. Robison, 109 Tex. 6, 160 S. W. 955, are convincing that the above holding is in line with the views of that court. In that opinion, speaking of chapter 160, supra, Justice Phillips says:

"There is no conflict between the act and article 5423, and we agree that the remedy of repurchase provided by the former is but cumulative of that of reinstatement afforded by the latter. * * * The plainly expressed intention of the act was to extend to forfeiting owners of the lands described a distinct and additional remedy for the reinvestiture of such title as was possessed under the original purchase from the state, a remedy which in nowise impaired that already provided in article 5423, yet is altogether inconsistent with it, and which for that reason, when once invoked, forbids resort to any other. The effect of the act is to afford to the forfeiting owner the privilege of a reappraisement of the land and its repurchase at its new valuation. The title, however, may be reacquired under the act only by purchase at such valuation. * * *

"The reappraisement is obtained under the act only in response to the forfeiting owner's notice to the commissioner of his wish to repurchase, and the right to repurchase is likewise only so acquired. It is this notice to the commissioner, in a word, that puts the act in operation in the forfeiting owner's behalf. By invoking the remedy of the act as a means for the reacquisition of the title, in the process of its reacquisition he is necessarily under every obligation imposed by its terms. * * * The act does not relate to any acquisition of the title except upon the full performance of the purchase obligation, as it only deals with the previous owner as a new purchaser, with his former obligation canceled by the forfeiture of the previous sale. * * * We think that the act at best only gives the previous owner the preference right to repurchase the land. * * *"

The statute in terms gives the previous owner only the preference right to repurchase the land. It gives him no right in the land. It gives him a right, in preference to others, to acquire rights in the land—the title. From the date of forfeiture until the date of the reaward of the land to him by the state, the ownership is out of him and not in him. It is in the state.

Under chapter 173 of the Acts of the Thirty-Third Legislature, defendant in error had a right to obtain a permit to prospect for and develop petroleum oil or natural gas in the land.

Section 9 of chapter 173 of the Acts of the Thirty-Third Legislature, on which Boykin's claim of 20 cents an acre is based, applies only to lands that have been sold by the state—lands owned by private persons at the date of the issue of the permit. Since the sections under consideration in this case had not been sold by the state at the date of the issue of the permits, the provision for payment of 20 cents per acre to the owner of the surface did not apply. Nothing was due to Boykin to whom the land was awarded after the issuance of the permits. Section 29 of the act (Vernon's Sayles' Ann. Civ. St. 1914, art. 5920g) reads:

"The issuance of a permit or lease or the filing of a prospector's affidavit on unsold land included within this act, shall not prevent the sale of the land without minerals on which such mineral or mining claim may be located under the laws applicable to such land, but in case of such sale after an application has been filed with the county clerk so herein provided the purchaser of such land shall not be entitled to any part of the proceeds of such minerals or mining location nor other compensation, nor shall such purchaser have any action for damages done to such land by or resulting from the proper working of or operation under such permit, lease or prospector's claim."

[2] In addition to Boykin's first assignment of error, which is in full conformity with the rules of the Supreme Court, there appears in the application, just as set out below, the following:

"Second Assignment of Error.

"Where the state awards lands to a settler and he enters into possession under such award, improves the property and continually lives thereon same constitutes his homestead, and no one has the right under the Constitution to disturb him in such possession or use any part of his property and especially unless he is compensated therefor."

"Third Assignment of Error.

"Chapter 173 of the Acts of the Thirty-Third Legislature, allowing permittees to prospect for oil and other minerals on property theretofore awarded to settlers and in the possession of such settlers at the time and constituting the home of such settlers and not allowing such settlers compensation for the use of the surface is invalid, and in violation of the provisions of the Constitution of the state of Texas giving the head of a family a homestead, and protecting him in the exclusive possession thereof, and also in violation of the constitutional provision that no one shall be deprived of his property without compensation and without due process of law."

It is observed that neither of these purported assignments of error refers to any action of the Court of Civil Appeals on the question attempted to be presented by it. In fact, nothing was presented in the trial court or in the motion for rehearing in that court or by assignment in the Court of Civil Appeals touching the questions attempted to be raised in these purported assignments except in the motion for rehearing in the Court of Civil Appeals. The questions were attempted to be raised in that motion.

Subdivision (c) of Supreme Court rule No. 1 reads:

"The decision or ruling sought to be reviewed must have been assigned as error in the motion for new trial in the trial court, if such motion was made or required by law to be made, and such error must have been assigned and presented in the Court of Civil Appeals and in a motion for rehearing in the latter court. If the decision or ruling sought to be reviewed originated in the Court of Civil Appeals, it must have been presented in the motion for rehearing in that court. The application shall state that the particular decision or ruling was

assigned as error in the motion for rehearing in the Court of Civil Appeals."

Neither of the above-quoted purported assignments of error is an express and direct assignment of error, and in fact none of the matters attempted to be presented therein were presented to or passed upon in any way by either the trial court or the Court of Civil Appeals. The inclusion in the motion for rehearing in the Court of Civil Appeals of questions not' raised in the Court of Civil Appeals and concerning which no action was taken and no holding made by that court is not sufficient to authorize the Supreme Court to pass on such questions under rule No. 1 of the Supreme Court.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.