## NACOGDOCHES COUNTY et al. v. LAFFERTY et al.

### No. 1680—6167.

Commission of Appeals of Texas, Section A.

June 24, 1933.

Adams & McAlister, of Nacogdoches, and J. T. Suggs, Rice, Hyman & Suggs, and J. T. Suggs, Jr., all of Dallas, for plaintiffs in error.

Gill, Jones & Tyler, L. P. Lollar, and Wallace Tyler, all of Houston, for defendants in error.

HARVEY, Presiding Judge.

This controversy involves the alleged right of the defendants in error, J. Edgar Lafferty and W. S. Swilley, to recover of Nacogdoches

county the amount called for by certain warrants issued by the county to one R. E. King; the warrants aggregating the sum of $23,000. The trial court rendered judgment for Lafferty and Swilley, for the amount sued for, and the Court of Civil Appeals affirmed that judgment. 43 S.W.(2d) 460.

The material facts are substantially as follows:

On May 26, 1926, the said R. E. King and Nacogdoches county, the latter acting through the commissioners' court of the county, entered into a written contract under which King became bound to compile and install for said county a complete "plat book system," consisting of maps, an abstract, and other matter comprehended by articles 7335 and 7344 of the Revised Statutes of 1925. For the complete work, put into permanent form, King, according to the terms of the contract, was to receive the sum of $35,000, made up as follows: (a) To the extent of $24,500 of said sum, 30 per cent. of all state and county delinquent taxes, penalties, and interest, as and when collected; and (b) to the extent of $10,500 of said sum, 30 per cent. of the general fund delinquent taxes, as and when collected. It was provided in the contract that, in each of the above respects, the prescribed percentage of collections, as made, was to go into the county treasury as a special fund. It was further provided in the contract that from time to time, during the progress of the work, the county was to deliver warrants to King in denominations of $500 each, against such respective funds, until an aggregate of $26,000 in warrants were delivered, and the remainder of the warrants were to be delivered to King when he completed his contract and the work accepted by the commissioners' court. The provisions relative to the delivery of warrants during the progress of the work did not comprehend, as a basis for the warrants, the amount or value of the work done prior to the issuance of the warrants.

King entered upon the work and proceeded therewith for about one year, when he abandoned the contract. At the time he abandoned the contract, he had done a considerable amount of work in the way of preliminary pencil memoranda, sketches, etc., but the work called for in the contract was far from being complete, and, when King abandoned the contract, he took away with him all pencil memoranda, sketches, etc., which he had made. None of such preliminary work was ever put into permanent form. In a word, his contract was never even substantially completed. In the meantime, the county had, from time to time, delivered warrants to King, in the aggregate sum of $23,000, and these warrants are held by Lafferty and Swilley, who, previous to the abandonment of the contract by King, bought them in the open market, for value paid. These warrants were issued in groups of some five or six at a time, at various periods during the time King was proceeding with the work under the contract, and each time a group of the warrants was issued the commissioners' court passed, and entered on the minutes of the court, an order directing their issuance and delivery. In each of these orders, reference was made to the contract which had been made between the county and King, which contract appeared recorded in the minutes of the court, and each of the orders contained, among other things, the following: "And it appearing to the court that said R. E. King has prosecuted the work under his said contract to. the satisfaction of this court and that he is entitled to have delivered to him at this time under said contract the warrants hereinafter mentioned and described * * * and it is hereby declared that said R. E. King has performed his said contract in accordance with the terms thereof, and that he is entitled to receive the warrants hereinabove directed to be issued to him, and that Nacogdoches County has received full value for the warrants hereinafter authorized to be delivered."

Each of the warrants in question is, according to its terms, payable "to bearer" and contains, among other things, the following: "And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuance of this warrant have been properly done, have happened and been performed in regular and due time, form and manner, as required by law."

The county denies liability for the sums called for in the warrants, on the ground of abandonment of the contract by King and resulting failure of consideration. Lafferty and Swilley urge an equitable estoppel against the county's interposing the above defenses, first, because of the above recitals in the warrants, upon which Lafferty and Swilley relied in purchasing the warrants; secondly, because of the declarations and recitals contained in the respective orders of court, directing the delivery of the warrants to King, as hereinabove set out; and, thirdly, they urge estoppel by judgment or res adjudicata because, so they assert, the said court orders involve an adjudication of the fact that King had performed work under his contract to the extent, in value, of the sums called for in the warrants. The controlling questions in the case have reference to the above matters of estoppel and res adjudicata, and we shall direct our attention to those matters.

Under articles 7335 and 7344 of the Revised Statutes of 1925, the commissioners' court had authority to make the contract it did. Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.(2d) 535; Cherokee County v. Odom, 118 Tex. 288, 15 S.W.(2d) 538. The contract was executory, and was never completed by King. Under the terms of the

contract, and in accordance with the intent of the statutes, the right of King to receive for his work a percentage of delinquent taxes, etc., collected, as and when collected, was dependent upon his completing the work called for in the contract. The warrants sued on are non-negotiable instruments, and, of themselves, they created no legal liability for their payment. Liability in this respect emanated from the contract in pursuance of whose terms the warrants were issued. Purchasers of the warrants took them subject to all defenses which might justly be urged by the county in defeat of liability under the contract. That warrants containing a promise to pay create no liability or obligation on the part of the municipality that issues them, is settled law. They are prima facie evidence of the liability of the municipality to pay the amount named, but they do not create such liability or impose an obligation to pay. National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.(2d) 1027, and authorities there cited. No recital or promise to pay, which a warrant contains, can alter the legal effect of the instrument. Regardless of the fact recitals it contains, and of the purported promise to pay, the warrant remains merely prima facie evidence of the municipality's liability to pay the sum named. Third persons are chargeable with notice that this is the effect of the instrument.

■ Turning to the claim of estoppel on account of fact recitals contained in the court orders in question, it is to be observed that such orders recite, among other things, that King "has performed his said contract in accordance with the terms thereof." This statement, of course, was false, for the testimony shows, without dispute, that King had not performed his contract. He had not even substantially performed it. In view, therefore, of the fact that the county acquired no benefits in consequence of the false statement, the bare question arises as to whether or not the fact that Lafferty and Swilley relied on such false statement, in buying the warrants, raises an estoppel against a denial, by the county, of liability to pay the warrants. It has never been held in this state that false statements made by a commissioners' court, involving the liability of the county to pay a nonnegotiable instrument, will estop the county to deny such liability, where no benefits accrue to the county in

consequence of the false statements. The inconclusive character of the instrument forbids such a holding. Manifestly, recitals respecting the liability of a county, which are contained in an order of the commissioners' court directing the issuance of warrants, are on precisely the same footing as if contained in the warrants themselves. In either instance, the recitals emanate from the same source, and their legal status would be the same. In neither instance would the recitals, of themselves, afford ground for estoppel against the county. Substantial benefits actually received by the county, in consequence of the recitals, is an indispensable element.

■ Respecting the question of res adjudicata, if the fact that King had fully performed his contract were actually adjudicated by the commissioners' court, an entirely different question would appear. But the evidence in this case shows conclusively that such fact was not a subject of inquiry in connection with the issuance of any of the warrants, and therefore was not adjudicated. Counsel contends, however, that the fact that King had performed his contract to the extent, in value, of the amounts stated in the said court orders was adjudicated. The state of facts disclosed in the record raises in our minds grave doubt that said orders had that effect. But whether the orders had that effect or not is a matter of no importance. The liability of the county to pay the warrants depended for maturity on the completion of the contract, and, as already pointed out, the matter of completion of the contract was not under examination.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals affirming same be in all things reversed, and that judgment be here rendered to the effect (a) that the defendants in error, Lafferty and Swilley, take nothing; (b) that the county take nothing as against the Southern Surety Company; and (c) that the costs of suit in all the courts be taxed against Lafferty and Swilley.

CURETON, Chief Justice.

The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiffs in error, as recommended by the Commission of Appeals.