**SABINE COUNTY, TEX., et al. v. BROWN-CRUMMER INV. CO.**

No. 7492.

Circuit Court of Appeals, Fifth Circuit.

March 22, 1935.

John C. Jackson, of Houston, Tex., and Steve M. King, of Beaumont, Tex., for appellants.

J. J. Collins and E. J. Mantooth, both of Lufkin, Tex., and Thomas E. Elcock and James G. Martin, both of Wichita, Kan., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Another "Plat Book Warrant" litigation,[1] this one resulted in a verdict and judgment for plaintiff for $7,000, the face value of the fourteen warrants sued on. There was much pleading below. Plaintiff, suing on its warrants, alleged the circumstances of their issuance and their purchase by it in good faith and for value, in reliance upon the recitals in the warrants and the representations made to them by the county officers that they were valid and

---

[1] Texas Rev. Civ. Stats. 1925, arts. 7335, 7344; Cherokee County v. Odom, 118 Tex. 288, 15 S.W.(2d) 538; Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.(2d) 535; City of Dublin v. Thornton & Co. (Tex. Civ. App.) 60 S. W.(2d) 302; Nacogdoches County v. Lafferty (Tex. Com. App.) 61 S.W.(2d) 994.

binding. It was alleged that everything that should have been done in fact and in law to make the warrants valid was done, and it was specifically alleged that Harper & Harper, the plat book contractors, had in strict accordance with their contract gone about its performance, and were performing it when the county repudiated the contract and prevented Harper & Harper from going on with the work. It was alleged that the county had collected sufficient delinquent taxes to more than pay the warrants, but in breach of the contract had not placed them in the plat book warrant fund as had been agreed. It alleged demand of and refusal by the county to pay. The defendants excepted at great length, and for various reasons, to the petition. At greater length they answered, in effect admitting the execution of the contract, the action of the county in abrogating it as illegal, the issuance of the warrants and its refusal to pay them, but particularly denying that the county had collected a sufficient, or any, amount of delinquent taxes applicable to the payment of the warrants. That is to say, they alleged that no delinquent taxes had been collected for Sabine county through the efforts of Harper & Harper. They do not, however, deny that delinquent taxes have been collected since the warrants were issued more than sufficient to pay them.

Affirming that the order of the county canceling and repudiating the contract was valid, they alleged also that the contractors had not performed their contract, nor offered to perform it, since the cancellation order was entered. Other objections to the contract pleaded by them were: The excessive amount they had agreed to pay; the failure to comply with certain forms of procedure; and, finally, that consideration for the warrants had failed because the work the contract called for had not been completed.

On the trial plaintiff proved the making of the contract, its agreement to purchase the $25,000 of warrants, the contract called for, the issuance and the actual purchase of $7,000 of them—issued when and as provided in the contract. It offered the warrants containing the usual recitals as to the performance of the conditions precedent to their issuance, and as to their validity and binding obligation. It offered the contract, a typical plat book system contract, providing for the making of a block map of Sabine county, showing each and every tract, lot, or parcel of land in it, and the delinquencies of each, and for making surveys when necessary, as a basis for collecting and for the collection of delinquent taxes. The moneys to be collected were to be placed in a fund to be denominated plat book warrant fund, class A, and the warrants were to be paid out of the fund. The contract provided for the issuance of the warrants, $3,000 on April 27, 1925, to cover expenses of moving, organization, and purchase of permanent supplies; $2,000 on May 15, 1925; $2,000 on the 15th day of each month afterward; warrants to be in denominations of $500 and not to draw interest. The system to be completed within twelve months and the taxes to be collected as quickly as possible. Paragraph 9, on which appellants mainly rely, provided: "It is further agreed that in no event shall said warrants be paid out of any other funds except the delinquent tax fund to be created only by the collection of delinquent taxes, collected by and through the efforts of Harper & Harper under this contract." It was further provided that they should, and the contractors did, make a bond of $7,500 to guarantee performance. It was proven that the purchase of the warrants was made on the faith of the record and of the recitals in the warrants. Harper testified that before making the contract he examined the records of Sabine county, and found more than $100,000 delinquencies; the exact figures were $115,700. That the records then were in such shape that the plat book system would assist in their collection. That he had gone to work, bought books and supplies, and brought his workers down, and he and they had been actively engaged in the work daily, except Sundays, for nearly two months when the cancellation was ordered. When this occurred, they had about one-third of the county made up in pencil sketches ready to be put in permanent form, and had sent out some delinquent notices. Any one could have taken the temporary work and gone ahead with the collection of taxes, the pencil sketch showed the record description of the land and the delinquent taxes on it, and any abstract attorney or county attorney could have filed suit from these sketches. When advised of the cancellation of his contract, he protested and objected, asked to be permitted, and held himself ready, to go on, but he had not been permitted to do so.

Because of the cancellation, neither he nor his attorney had collected any delinquent taxes.

The defendants put on only one witness, the county clerk, to identify a letter from Harper & Harper, dated July 13, 1925, asking for the $2,000 due to be issued in July, and stating that they were ready and willing to complete the contract and expected to be paid for it. The testimony ended, and, both plaintiff and defendant moving for an instructed verdict, the verdict was instructed for plaintiff. Appellants are here insisting that plaintiff has failed to make out a case. They argue that since the contract for the warrants and the law which authorized them provided they were to be paid only out of delinquent taxes collected and deposited in a "plat book warrant fund," and there was no proof that any delinquent taxes had been collected by the contractors, but, on the contrary, the proof was that none had been, plaintiff's suit failed.

We do not think so. In Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373, 375, speaking of county warrants, the Supreme Court of Texas said: "Before public securities so issued are invalidated by the judgment of a court, it ought to be plain that their issuance was in violation of law." In Commissioners' Court v. Wallace, 118 Tex. 279, 15 S.W.(2d) 535, and Cherokee County v. Odom, 118 Tex. 288, 15 S.W.(2d) 538, that court has declared that plat book warrants, issued as these were, were validly issued. But appellants say, citing Dublin v. Thornton, etc., Co., and Nacogdoches County v. Lafferty, note 1, supra, though valid when issued, they were made invalid by the failure of the contractors to complete the contract.

This is not a case as those were, where the failure to complete the contract was due to its abandonment by the contractor. This is a case where, after the contractors had been going ahead with the work for some time, the county wrongfully prevented their completing it, and, from all that appears, has received benefits from the work done to the amount of the warrants. The Texas cases above cited, and our cases, Hidalgo County Drainage Dist. v. Creath, 68 F.(2d) 119, 120; City of South Houston v. Carman, 6 F.(2d) 358; City of Belton v. Brown-Crummer Inv. Co., 17 F.(2d) 70, make it clear that, though the recitals in warrants may be rebutted by proof, until so rebutted they are taken to be true. They make it clear, too, that though warrants are nonnegotiable, and, being only prima facie evidence of the liability of a public body like a county, may be overthrown by proof impeaching them, they are valid until overthrown, and the burden of overthrowing them is on the attacker. This burden the county has entirely failed to discharge.

It is not meant to hold, of course, that the breach by the county estopped it from showing that the consideration for the warrants has failed. What is held is that there was no such proof. Proof, without more, that the county repudiated and breached the contract, thus preventing its complete performance, certainly does not impeach the warrants, or prevent their collection. The situation here is as it was in Creath's Case; warrants are being contested on points of law which are not well taken. If there are fact defenses to them, they are not proven.

The judgment was right. It is affirmed.

