# City of San Angelo v. E. P. Deutsch.

No. 6805.  Decided February 5, 1936.
(91 S. W., 2d Series, 308.)

*R. G. Hughes,* City Attorney for the City of San Angelo, for plaintiff in error.

*Dilworth & Marshall,* of San Antonio, *Collins, Jackson & Snodgrass,* of San Angelo, *H. A. Cline,* of Wharton, and *Deutsch, Kerrigan & Burke,* of New Orleans, La., for defendant in error.

MR. JUDGE SMEDLEY delivered the opinion for the court.

The question presented for decision is thus concisely stated in the opinion of the Court of Civil Appeals: "Whether the city is estopped to assert a lien for unpaid taxes, to the injury of an innocent mortgagee who lends money on property as security, on the faith of and in reliance upon, its assessment rolls showing that such taxes have been paid."

Defendant in error, Deutsch, sued plaintiff in error, the City of San Angelo, to remove from his title to certain improved real estate the cloud cast by the city's claim of a lien on said property to secure the payment of delinquent taxes assessed against the property by the city for the years 1928, 1929 and 1930 to the amount of $5,436.25, together with interest and penalties. The trial court sustained a general demurrer to the petition and entered judgment dismissing the suit. The Court of Civil Appeals reversed the judgment of the trial·court and remanded the cause. 73 S. W. (2d) 125.

The material facts alleged in plaintiff's petition are:

Southern Improvement & Securities Corporation became indebted to defendant in error in the sum of $39,000, which was evidenced by a note secured by deed of trust on certain improved property in the City of San Angelo owned by said corporation. Before accepting the note and deed of trust, defendant in error examined the delinquent tax records and rolls of the city, which were the official and formal tax records kept by the city, and found that the said rolls and records showed that taxes on the property had been paid for the years 1928, 1929 and 1930. He relied upon these records and would not have consummated the transaction had they not shown that the taxes were paid. Upon default by the maker of the

note defendant in error foreclosed his lien by suit and bought the property at the foreclosure sale for a sum $16,727.69 less than the amount of the debt. Prior to the time when defendant in error took the note and deed of trust and examined the tax records, the owner of the property undertook to pay the taxes for the years 1928, 1929 and 1930 by delivering to the tax collector of the city a draft drawn on a corporation at Houston, Texas. The tax collector accepted this draft, made the entries on the tax records showing payment of the taxes and forwarded the draft for collection. The draft was returned unpaid and the tax collector changed the entries in the records to indicate that the taxes were not paid. This change of the entries was made after defendant in error had accepted the note and deed of trust. The maker of the note is insolvent, as are also all other persons against whom defendant in error might have a claim in the event he should be required to pay the taxes in order to protect his title to the property. It is alleged that by reason of its having represented by the entries in its public records that the taxes were paid and having caused the public and defendant in error to believe that the taxes had been paid the city is now estopped to assert or claim such taxes as a lien upon the property.

We agree with the trial court's conclusion that the petition of defendant in error states no cause of action. The effort on the part of defendant in error is to bind and estop the city by an unauthorized act of one of its officials in the performance of a governmental function and when the city has received no benefit from the act.

■ Article 1060, Revised Civil Statutes of 1925, provides that all taxes assessed by a city shall be a lien upon the property against which they are assessed, meaning of course that the lien shall exist until the taxes are actually paid or until the lien is foreclosed. Payment by draft was no payment, as a tax collector has no authority to receive anything but cash in settlement of taxes. Austin v. Fox (Com. App.), 1 S. W. (2d) 601; Scisson v. State, 121 Texas Crim. Rep., 71, 51 S. W. (2d) 703; Ward v. Marion County, 26 Texas Civ. App., 361, 62 S. W., 557; City National Bank of El Paso v. City of El Paso, 10 Fed. (2d) 308.

The collection of taxes is undoubtedly a governmental function. The Supreme Court of Missouri, in Simmons Hardware Company v. City of St. Louis, 192 S. W., 394, 398, declared the power of taxation to be one of the highest and most

characteristic of the governmental functions of municipal corporations. Judge Cooley said: "The power of taxation is an essential and inherent attribute of sovereignty belonging as a matter of right to every independent government." Cooley's The Law of Taxation (4th ed.), vol. 1, sec. 57. See also: Philadelphia Mortgage & Trust Co. v. Omaha, 63 Neb., 280, 88 N. W., 523, 93 Am. St. Rep., 442; Id., 65 Neb., 93, 90 N. W., 1005, 57 L. R. A., 150, 153; McQuillin's Municipal Corporations, vol. 6, sec. 2644, p. 5458; 43 Corpus Juris, sec. 1753, p. 973.

■ Since the action of the tax collector in causing the tax records to show that the taxes were paid when in fact they were not paid was unauthorized, and since the tax collector in collecting taxes and in keeping the records essential to their collection was exercising for the city powers essentially public and governmental, it follows that the city is not estopped by the acts of the tax collector from asserting its lien for the taxes, unless exception is made to the well settled rule that cities are not liable for the unauthorized or negligent acts of their officials in the performance of the city's governmental functions.

The decisions in this State have consistently protected the public from liability and loss on account of mistakes, negligence and unauthorized acts of public officials in the performance of public or governmental duties. Mistakes or unauthorized acts of officials charged with the custody and disposition of public land do not estop the State or deprive it of its property. Day Land & Cattle Co. v. State, 68 Texas, 526, 553, 4 S. W., 865; Jones v. Robison, 104 Texas, 70, 133 S. W., 879; Weatherly v. Jackson, 123 Texas, 213, 71 S. W. (2d) 259; Grayburg Oil Co. v. State, 50 S. W. (2d) 355 (Application for Writ of Error refused). A city or other public corporation or political subdivision is not estopped by recitals in its nonnegotiable warrants, that all conditions precedent to their issuance have been performed, to assert as against a bona fide purchaser that the warrants were issued without consideration. In so holding the court said in National Surety Company v. State Trust & Saving Bank, 119 Texas, 353, 363, 29 S. W. (2d) 1027; "Nor will any negligent or fraudulent conduct or act of any city agent, in respect to the emission of a city warrant, bind the city to any liability, by way of estoppel or otherwise, if the city receives no benefit from the transaction." See also: Nacogdoches County v. Lafferty (Com. App.), 61 S. W. (2d) 994; City of Dublin v. H. B. Thornton & Co., 60 S. W. (2d) 302

(Application for Writ of Error refused); City of Weslaco v. *Porter* (U. S. C. C. A.), 56 Fed. (2d) 6. Many cases hold that a city is not liable for personal injuries to its employees or to others caused by the negligent acts of its officials or agents while discharging governmental functions of the city. Among the cases so holding are: City of Wichita Falls v. Robison, 121 Texas, 133, 46 S. W. (2d) 965; King v. City of San Angelo, 66 S. W. (2d) 418.

The cases in which questions of liability are presented are the same in their general nature and in the reasons underlying their decision as are those in which estoppel is invoked. In both, the individual, because of the act of an employee or agent of the city, suffers injury or loss. Estoppel when applied against a city imposes loss upon it or deprives it of a right which it would have but for the act constituting the ground of estoppel and thus is in effect like liability for a negligent act. In both cases conflict arises between the rights or interests of the public and those of the individual. The rule is that when such conflict arises the rights or interests of the individual must yield. This is necessary because the city's public or governmental business must go forward, unimpeded by the fault, negligence or frailty of those charged with its administration. A court which holds that a city is not liable in damages for injuries suffered from the negligence of its officer or agent engaged in the performance of a governmental function cannot consistently hold that the city is estopped by the act of its officer or agent engaged in the performance of a governmental function, unless there are peculiar facts which give rise to other equities than loss or injury to the individual who has relied upon the act of the officer or agent.

The rule that a city is not estopped by the mistakes or unauthorized or wrongful acts of its officers or agents is thus stated in Ruling Case Law: "No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of, or because of a wrong committed by, one of its officers or agents which has been relied upon by a third party to his detriment. So a municipality is not estopped by the unauthorized acts of its officer or agent, or by his wrongful act. Nor can an estoppel result from official fraud and corruption." 10 Ruling Case Law, sec 35, pp. 707-708. The text gives only two exceptions to the rule and both are cases in which the city received benefits from

the irregular or wrongful act and afterwards sought to repudiate it. See also 21 Corpus Juris, sec 193, pp. 1191-1193.

In Philadelphia Mortgage & Trust Co. v. Omaha, 63 Neb., 280, 88 N. W., 523, 93 Am. St. Rep., 442; Id., 65 Neb., 93, 90 N. W., 1005, 57 L. R. A., 150, the facts are the same as those in the instant case and the same relief was sought. The trial court's judgment dismissing the action because the plaintiff's bill was without equity was affirmed. We quote with approval that part of Justice Holcomb's opinion which clearly states the question presented and gives the convincing reasons supporting the decision:

"Counsel for appellant, in their brief, say: 'A municipal corporation may be estopped by the action of its proper officers, when acting in its private, as contradistinguished from its governmental, capacity, and having lawful power to do the act.' Conceding the proposition thus enunciated to be correct, can it be said that the act of the city treasurer in erroneously noting on the tax records of a municipality that certain taxes were paid, when, as a matter of fact, they were not, is the act of the corporation in its private or individual capacity and not one pertaining to the government of its affairs? It is frequently said that a municipality has a double character,—one, governmental, legislative, or public; and the other, proprietary or private. Dill. Mun. Corp. 4th ed. sec 66. The authority to assess property, collect taxes, and make disbursements thereof is founded solely and exclusively on the theory that it is essentially a part of the machinery of government, necessary to maintain its existence for the benefit of the public; and it would seem to follow as a natural deduction that the agencies employed in respect of such matters, including the agency authorized to collect the taxes levied for public purposes, exercise powers of a public and governmental character. If correct in the statement just made, then it follows, according to the rule advanced by plaintiff, that the action taken by one of the public officers of the corporation, which is relied on to operate as an estoppel, was not an act of the corporation, in its private or proprietary character, and hence the doctrine invoked is not applicable. The reasons for the distinction have been recognized and applied by this court in an action wherein it was sought to establish the liability of a city for the negligent acts of one of its servants and employees, committed while in the performance of his duties as an agent or servant of the municipality. Gillespie v. Lincoln, 35 Neb., 34, 16 L. R. A., 349, 52 N. W., 811. It is there held, in substance, that the

exception to the general rule as to liability is based upon a public policy which subordinates private interests only to the welfare of the public generally, and we apprehend that this is the underlying and distinguishing principle as to the law of estoppel when it is invoked against a city for the erroneous acts of one of its officers engaged in the management of some branch of the governmental affairs of the municipality. For reasons as potent as those relieving a city from liability because of the negligent acts of its officers, it would seem estoppel cannot be predicated on or arise from acts of negligence or mistake by an agent of the corporation while in the discharge of the governmental affairs of the municipality. If the rule can be invoked by reason of such errors or mistakes, then, indeed, would the public welfare be seriously menaced, and the ability of the corporation to perform its public functions in many instances dangerously crippled. The correct rule, therefore, is, and should be, that the doctrine can be appealed to effectively, as against a municipal corporation, only when it is acting in its private, as contradistinguished from the public or governmental, capacity. There may be, and probably are, exceptions to the rule stated, as when a municipality has gained a clear and decided advantage by the act relied on to operate as an estoppel, when equity will prevent it from retaining the advantage, and at the same time denying its binding force. In the present case, it is to be borne in mind, nothing of advantage has been gained by the city by the erroneous and mistaken action of its city treasurer, and that the success of the plaintiff can result only in a corresponding loss to the city."

The action of the Nebraska court in placing its affirmance on another ground when writing on rehearing and in leaving open the question discussed in the original opinion, takes nothing from the intrinsic soundness of Justice Holcomb's reasoning and conclusion.

The decision as first made by the Nebraska court in the case above discussed was approved by the Supreme Court of Texas in Krause v. City of El Paso, 101 Texas, 211, 217, 106 S. W., 121, 14 L. R. A. (N. S.) 582, 130 Am. St. Rep., 831, and thus was given weight as authority in this State. Justice Brown, after stating the facts in the Nebraska case and the claim of the trust company that the city was estopped by the acts of the tax collector, said: "There is nothing in the facts of that case to bring it within the rule under which the authorities apply the doctrine (estoppel) to municipal corpora-

tions." In Cawthorn v. City of Houston (Com. App.), 231 S. W., 701, 704, Judge Powell quoted a portion of what has been quoted above from the Nebraska case and said: "The Supreme Court of Texas is in accord with the Nebraska decision just quoted as will be seen from its opinion in the case of Krause v. City of El Paso."

The opinion in Cawthorn v. City of Houston contains the following broad statement with respect to estoppel of cities:

"It will be seen from the above opinion that in Texas the doctrine of estoppel not only applies generally where the city is acting in its proprietary capacity, but also by reason of the negligence or unauthorized acts of its officers, where the equities of the situation demand it."

It does not undertake, however, to define or explain the character of the equities or the situation that may demand the application of the doctrine of estoppel to a city when acting in its governmental capacity, and it is not to be construed as holding that financial loss to an individual who relies upon the act of an official engaged in the performance of governmental duties is of itself sufficient to estop the city.

The opinion is expressed in a number of decisions that a city may be estopped even when it is acting in its public capacity if it has received or accepted benefit from the transaction. Payne v. First Natl. Bank (Com. App.), 291 S. W., 209, 212; City of Dublin v. H. B. Thornton & Co., 60 S. W. (2d) 302 (Application for Writ of Error refused); New Haven v. Weston, 87 Vt., 7, 86 Atl., 996, 46 L. R. A. (N. S.) 921; Philadelphia Mortgage & Trust Co. v. Omaha, 63 Neb., 280, 88 N. W., 523, 93 Am. St. Rep., 442; Id. 65 Neb., 93, 90 N. W., 1005, 57 L. R. A., 150, 153; 10 Ruling Case Law, sec. 35, pp. 707-708. In such case exception is properly made to the general rule which has been discussed, because there is added to the equities existing in favor of the individual on account of his reliance and injury the established and compelling equitable principle that the city may not after having accepted benefit from the unauthorized act repudiate it so far as it imposes an obligation upon it or is disadvantageous to it. Doty v. Barnard, 92 Texas, 104, 47 S. W., 712; 17 Texas Jur., pp. 135-136, sec. 7. This exception is not applicable here because the city received no benefit from the unauthorized entries made in the tax records.

The case presented by the petition is one of hardship to an individual who has relied to his injury upon a public record but it is in principle the same as any other case where

the individual has suffered injury or loss from the unauthorized or negligent act of an official or agent of the city engaged in the city's governmental or public affairs and must be decided in accordance with the established rule.

■ State v. Davisson, 280 S. W., 292, decided by one of the courts of civil appeals, and in which application for writ of error was refused, appeals to conflict with the decision herein made. The refusal of the application for writ of error did not involve approval by the Supreme Court of the holding of the Court of Civil Appeals on the question of estoppel. This is true because the application for writ of error was filed and refused before Article 1728, Revised Civil Statutes 1925, was so amended as to provide in substance that the Supreme Court shall refuse the application for writ of error in cases where the judgment of the Court of Civil Appeals is a correct one and where the principles of law declared in the opinion of the Court of Civil Appeals are correctly determined, and further because the application for the writ which was filed in that case contained no assignment questioning the correctness of the ruling of the Court of Civil Appeals that the certificate issued by the tax collector might be made the basis of estoppel.

The authorities in other states are conflicting. The conclusion herein reached is supported by the following decisions: Philadelphia Mortgage & Trust Co. v. Omaha, 63 Neb., 280, 88 N. W., 523, 93 Am. St. Rep., 442; Id., 65 Neb., 93, 90 N. W., 1005, 57 L. R. A., 150; Farrow v. City Council of Charleston, 169 S. C., 373, 168 S. E., 852, 87 A. L. R., 981; Graton v. City of Cambridge, 250 Mass., 317, 145 N. E., 453; Auger v. City of New Bedford, 265 Mass., 327, 163 N. E., 873; Kuhl v. Mayor of New Jersey, 23 N. J. Eq., 84. Cases holding that a city may be estopped under similar or somewhat similar facts are: Curnen v. Mayor of City of New York, 79 N. Y., 511; Rankin v. City of N. Y., 145 App. Div., 838, 130 N. Y. Sup., 427 (Affirmed in 204 N. Y., 684, 98 N. E., 1114); Weil v. City of N. Y., 179 App. Div., 80, 166 N. Y. Sup., 221 (Affirmed in 223 N. Y., 599, 119 N. E., 1085); Seward v. Fisken, 122 Wash., 225, 210 Pac., 378, 27 A. L. R., 1028; Jiska v. Ringgold Co., 57 Iowa, 630, 11 N. W., 618; City of Pa. v. Anderson, 142 Pa., 357, 21 Atl., 976, 12 L. R. A., 751; City of Erie v. Piece of Land, 308 Pa., 454, 162 Atl., 445; Antanoff v. Zolyan, 104 Pa., 102, 158 Atl., 636.

The value of the New York decisions as authorities is weakened by the peculiar facts of Curnen v. Mayor of City

of New York, supra, which the other New York cases follow. The taxes were in fact paid through mistake by one who was not the owner of the property and proper entry was made in the tax records. The plaintiff, when he purchased the property, examined the records and found that they showed the taxes to be paid. Thereafter, the city permitted the entry of an agreed judgment for recovery of the taxes and then sought to assert and foreclose a lien. The opinion, in denying the city the right to foreclose as against the purchaser, stresses the fact that at the time he purchased the property the taxes had actually been paid and the lien discharged.

The Pennsylvania decisions rest primarily, if not wholly, upon a statute which made it the duty of the tax collector to furnish certificates of all taxes and claims secured by lien on real estate and which was construed by the court as evidencing the intention of the legislature that such certificates when issued should be binding upon the city. A similar statute accounts for the decision in the Iowa case above cited.

■ In this State there is no statute applicable to plaintiff in error which undertakes to make entries in the tax records or tax receipts or certificates effective to estop the city from collecting its unpaid taxes. It is unnecessary to express opinion as to the construction or validity of Chapter 77, Acts Second Called Session, Forty-first Legislature (1929), p. 153 (Art. 7258a, Vernon's Ann. Civ. Stat.), which provides that certificates showing payment of all taxes shall be conclusive evidence of such payment, as that statute applies only to counties containing a population of 210,000 and to cities and political subdivisions and districts in such counties.

The Court of Civil Appeals correctly held that there was no merit in the assignments of error presented by defendant in error in his brief in that court which questioned the validity of the assessments.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court February 5, 1936.