CITY COMMISSION OF PAMPA, Texas,
et al., Appellants,

v.

Herman WHATLEY et al., Appellees.

No. 7226.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 11, 1963.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellants.

Gassaway, Allen & Norman, Borger, for appellees.

CHAPMAN, Justice.

This case involves the right of appellees, (Herman Whatley, W. C. Fry, Claude Wilson, A. W. Lunsford, and A. C. Troop) each a private individual occupying no official position in the city of Pampa or Gray County, to a writ of mandamus to compel the city commission of Pampa to fix a day for holding recall elections upon the commissioners of three of the four wards [1] of the city of Pampa and by such order direct that each election be held the same day and that only the qualified electors residing in the respective wards be permitted to cast ballots for or against the commissioners in whose ward such electors resided. Appellees Whatley, Wilson, and Troop were alleged to be candidates to fill

[1] Newt Secrist, commissioner of Ward 2 has resigned pending appeal and is no longer a party in his official capacity or otherwise.

the positions proposed to be created by the recall election sought. The election was ordered by the commission to determine whether Mayor Sidwell should be recalled from his elective office as mayor of the city of Pampa, so that question is not before us. It was denied as to the four commissioners "for the reason that said petitions, singly and compositely, do not comply with the requirements of Article 4, Section 2 of the charter of the city of Pampa authorizing the governing authority of the city to order and fix a day for holding a recall election * * *," naming each commissioner in each order denying the petitions.

The trial court granted the writ of mandamus. The three commissioners now involved are Lloyd M. Simpson, Commissioner of Ward One (1); Leon Holmes, Commissioner of Ward Three (3); and L. P. Fort, Commissioner of Ward Four (4).

All emphases herein are ours.

There is no special statutory authority in Texas authorizing private citizens to bring actions for the removal of elective municipal officers in recall elections. The only specific statutory procedures we have found in connection with the removal of municipal officers are Articles 5991 through 5995 Vernon's Tex.Civ.St. and those statutes have no application to the instant case. If the petitions had been brought under specific statutory authority, mandamus would have been applicable to enforce such special statutory right. Yett v. Cook, 115 Tex. 205, 281 S.W. 837. In that case our Supreme Court said:

"The cases of Sansom v. Mercer [68 Tex. 488, 5 S.W. 62], * * * Kimberly v. Morris, 87 Tex. 637, 31 S.W. 808, and Boynton v. Brown (Tex. Civ.App.) 164 S.W. 893, are not in point in favor of defendant in error. In each of these cases there was a statute conferring upon certain petitioners the right to have an election ordered. Mandamus was awarded to enforce this special statutory right."

■ Therefore, the only authority petitioners had in the instant case was the charter authority provided in the Pampa City Charter for the recall of the elected municipal officers. That charter provision provided that a petition for the recall of any elective officer of the city "shall be signed by at least thirty (30) per cent of the qualified voters, *to be determined by the number of votes cast in the last regular municipal election*; at least one-tenth (1–10) of these signing the petition shall certify that at the election at which the officer or officers was or were elected, they voted for the election of such officer or officers proposed to be recalled." That charter provision was enacted at a time when the city of Pampa operated with a mayor and two city commissioners elected from the city at large. When the ward system with four commissioners was adopted, the provision for recall of elective officers was not amended and had not been amended to the day the petitions for recall were submitted to the commission.

None of the petitions for recall of any commissioner complied with the plain requirement of the charter to the effect that the petitions for recall of *any elective officer* shall be signed by at least *thirty per cent* of the qualified voters *to be determined by the number of votes cast in the last regular municipal election.* When that charter provision became effective, it was completely operative because the commission was elected from the city as a whole and there was not any ward division within the city. When the city adopted the ward system it provided each commissioner should be elected from his own ward but it failed to amend the charter to make it conform to a situation where thirty per cent of the electors of any ward constituted a sufficient number of electors for the recall of that particular commissioner, provided ten per cent of them certified that at the election at which the officer sought to be recalled was elected they voted for him.

It is not possible from this record for us to know whether it was the intention of

the city when it adopted the ward system and left the recall section of the charter as it was, to require thirty per cent of the qualified voters *of the entire city* to sign a petition for recall of each commissioner or if it was an oversight in not amending the recall section to conform to the change. When elected, a commissioner becomes an officer for the entire city and his vote binds the entire city. It is not entirely unreasonable to assume that in leaving the recall section as it was the city was giving those who could not vote for three of the commissioners a voice in recalling them instead of leaving the recall only to the commissioner's own ward, whether friendly or unfriendly. Had they intended to change it all that would have been necessary would have been to amend the recall section to say each petition for recall of each commissioner should contain thirty per cent of the qualified voters in that commissioner's ward. This they did not do. We do not believe we have the authority to amend the charter by judicial decree in order to make it possible for the petitioners to mandamus the commission to call the elections even though it should be said that charters should be liberally construed in favor of the people.

One of the points urged by the Commission is that mandamus will not lie because the petition for writ of mandamus would require the performance by the commission of judicial functions in its determination as to whether the petition for the recall of each commissioner measures up to the requirements of the Pampa City Charter which are prerequisite to an order of the commission calling the election. We believe what we have already said would require us to hold that this point is well taken.

■ The city secretary under the charter of the city of Pampa was required to perform certain ministerial acts prerequisite to the presentation of the petition to the commission. This he did. The petitions provided they must include the number of voters heretofore mentioned, which re- quired of the commission an interpretation of the recall section of the charter as to whether it was thirty per cent of the voters of each ward or thirty per cent of the voters of the city as a whole. The acts of the city secretary were clearly ministerial while those of the commission were just as clearly discretionary. Mandamus will not lie in such instances but only where the acts sought to be enforced are ministerial in character or require discretionary acts of little substance. 37 T.J.2d Sections 18 and 19 beginning on page 617 and cases there cited. The difficulty comes in distinguishing between those which are ministerial or require little discretion and those requiring the performance of judicial functions or discretion of a material nature. Miller v. State, Tex.Civ.App., 53 S.W.2d 838 (writ refused); Young v. State, Tex.Civ.App., 87 S.W.2d 520 (writ refused).

The San Antonio Court of Civil Appeals in Boynton v. Brown, 164 S.W. 893, 895 (writ refused) has said:

"Under the operation of this rule, whenever the law directs an officer or officers to order an election when a certain number of qualified voters have joined in a petition for the same, it is made the duty of the officers to ascertain whether the requisite number of voters have joined in the petition, and whether they are qualified, and mandamus will not lie to control them in the exercise of that duty; but the officers upon whom is devolved the duty of calling the election will be allowed to exercise their own judgment. Their action must be based upon reason and fairness, however, and not be impelled by fraud, caprice or unfairness."

The fact that the election for recall of the mayor was promptly ordered seems to preclude any thought that the refusal to call the elections for recall of the commission was impelled by fraud, caprice or unfairness.

To illustrate the very fine distinction that has been drawn by our courts in determining

when mandamus will lie to compel city officials to call elections for recall, our court in quoting with approval from another authority in Miller v. State, supra, has said:[2]

> " 'Although mandamus is the appropriate remedy to compel the performance of a duty which is plain, positive, and ministerial in character and clearly imposed by law, it does not necessarily follow merely because the duty is discretionary or that the element of discretion exists in part, that mandamus will not lie. *The correct rule is that mandamus will not lie where the duty is clearly discretionary and the party upon whom the duty rests has exercised his discretion reasonably and within his jurisdiction; that is, upon facts sufficient to support his action.'* "

Mandamus was allowed in that case but that commission had no such discretion or judicial function to perform as the Pampa city commission had in the instant case. We believe the Pampa commission exercised its discretion reasonably and within its jurisdiction, upon facts clearly sufficient to support its action. The discretion it was called upon to exercise would immediately prompt disagreement among lawyers, just as it did in the instant case. In other words, the element of discretion was one of material substance.

The case from which we have just quoted was announced since 1927 so we must give it the same consideration as cases from the Supreme Court. 15 T.J.2d 600 Section 139; City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308, 312; Travelers Insurance Company v. Newsom, Tex.Civ. App., 352 S.W.2d 888, 894.

We believe what we have said is sufficient to dispose of the mandamus question; i. e., that mandamus is not a proper remedy under the facts of this case. However, appellants also urgently insist that petitioners for the elections had no such justiciable interest as to entitle them to require the commission to call the elections. All counsel agree that City Council of Wichita Falls v. Coker, Tex.Civ.App., 93 S.W.2d 459 (NWH) so holding has no material distinction to our case on that point. We are so firmly convinced that we have properly disposed of the case in what we have already said, we do not wish to discuss the justiciable interest question except to say that if the Coker case properly announces the law then appellants are also correct on that question. We do not deem it necessary to hold whether it does or does not and are satisfied to leave that question to the Supreme Court.

Accordingly, the judgment of the lower court is reversed and rendered.

---

**2.** The Miller case is one of those cited under the statement in 37 T.J.2d above mentioned.